Velma MILLER, Executrix of the Estate of
Isabel R. Kirchner, Deceased, Respondent,

v.

Darlene R. GAYMAN and Walter J.
Gayman, Appellants.

No. 56144

Supreme Court of Missouri,
Division No. 2.

July 17, 1972.

Zenge & Smith, Canton, for respondent.

J. Patrick Wheeler, Canton, Ralph Breidenstein, Kahoka, for appellants.

EAGER, Special Commissioner.

Plaintiff sued defendants in two counts. The first count was on a note of defendants for $35,000 payable to plaintiff's testatrix and her husband, who predeceased testatrix; the note was secured by a mortgage on land in Illinois. Plaintiff alleged ownership in Isabel R. Kirchner, her testatrix, by survivorship. It was further alleged: that the note could not be produced by plaintiff because it was lost or inadvertently destroyed, but that it was not in the hands of anyone having legal or equitable title thereto; that the mortgage was unsat-isfied of record; that principal of $30,000 was due and unpaid with interest at 5% since March 1, 1965, and also a reasonable attorney's fee. The second count sought recovery of $15,066.40, with interest, for other sums allegedly borrowed from the testatrix. The Court entered judgment for defendants on the second count and plaintiff has not appealed. We shall therefore confine our consideration to the action on the note. By their answer defendants admitted the execution of the note and mortgage; they denied the allegation that the note had been lost or destroyed and that it was not in the hands of anyone having title thereto. As an affirmative defense they alleged that the note "was renounced by decedent, Isabel R. Kirchner, prior to her death" and that defendants had been discharged of all obligations thereon; and they further asserted "the affirmative defenses of payment and renunciation * * *." Sundry other allegations of the petition were denied generally. Since defendants lived in Illinois, a writ of attachment was issued; it was later dissolved by stipulation upon entry of appearance. Defendants moved for a summary judgment; affidavits were filed pro and con. We find no definite ruling on that motion, but since the case went to trial on the merits, with a jury waived, the motion is of no further consequence. Motions for the production of documents on behalf of each party were sustained. The Court entered judgment for plaintiff on the note for $30,000 as principal, $7,772.48 as interest, and an attorney's fee of $3,777.25 (10%); as indicated, it entered judgment for defendants on Count 2.

At trial plaintiff produced the original recorded mortgage and a photostatic copy of the note which had been furnished by defendants on order of the Court. Plaintiff identified the signatures on both. Objection was made to the mortgage as irrelevant and to the copy of the note because it was secondary evidence. Both objections were overruled. Plaintiff identified various notations of payments on the

back of the note which she said were made by her father. That witness, her husband, her sister Twila Groene, and the latter's husband, all testified to the conversations had at a meeting held on June 16, 1969, at which both defendants and Mr. Zenge, counsel for plaintiff, were present. The essence of that testimony of the discussion was (over a continuing objection of privilege) : that defendant Darlene owed money to her mother; that a statement had been prepared by the mother under oath, which was produced and examined; this purported to show the status of the account of defendants with the mother and probably that of the other sisters; that all read it, and that Darlene said "they didn't owe that much"; that she admitted that the "note part" was correct and that the principal balance due was $30,000; that Darlene asked for a copy of the affidavit and said that she had figures; she was told that she could have a copy when she presented her figures, but that she never did; that Darlene later got a copy of the paper by court order. Plaintiff offered the paper as Exhibit 3, then and later, but it was excluded as self-serving and hearsay. The references to the paper were kept in evidence as an indication of what the parties were talking about. Some of this testimony was that defendants admitted that the note "was not paid,"—rather than a statement of what was *due*. Plaintiff offered in evidence admissions from the pleadings and from an affidavit of Darlene of the execution of the note and mortgage, that the mortgage was unsatisfied of record, and of the payments made on the note. At the conclusion of plaintiff's case defendants filed a "Motion for Directed Verdict," which the Court overruled.

All substantive testimony of the defendants themselves was excluded under the "Dead Man's Statute," but Darlene produced the original note, identified the signatures and her father's notations on the back, and she also identified the original mortgage. The note was then introduced as defendants' Exhibit A. Both Darlene

and Walter Gayman testified that what they said concerning the note at the family meeting was that the note had not been *"paid."* At this point counsel for plaintiff admitted that $5,000 had been paid on the principal. Darlene further testified that she asked at the meeting about the savings and loan accounts and "other money" and that plaintiff said that this would "come out" in her final report. Defendants offered in evidence Schedules E and G of the federal estate tax return of decedent. Schedule E was offered to show the holding of substantial sums of money and securities in the joint names of decedent and her daughters, including defendant Darlene. Schedule G was offered to show transfers during decedent's lifetime of real estate, securities, cash and savings and loan accounts in substantial amounts to the daughters of decedent and their husbands (and children), and presumably to show the inequality of such distributions, with less to defendants. The theory of defendants' counsel on this (and certain depositions to be mentioned later) was to show a motive for the supposed renunciation of defendants' note. This evidence was excluded upon objection that it had no probative value on the issues raised by the pleadings. There was evidence that Isabel Kirchner frequently visited her daughter Darlene in Illinois, stayed for more or less extended periods, and that their relations were very cordial. The will of the testatrix, filed in connection with the motion for a summary judgment, left the residue of her estate to her three daughters, "share and share alike."

The testimony on which the claim of renunciation is based came from one Esther Ruckman of Ottumwa, Iowa. She testified: that she had known decedent for 20 years, that both were interested in raising dogs, and that they visited in each other's homes; that she also knew and visited with the defendants and had been in their home at times when decedent was visiting there; that she was present in defendants' home on a day during March 1965 when

decedent was there; that "they had their tax papers all spread out" on card tables, with decedent "helping," and that the discussion was of "taxes and money"; that Mrs. Kirchner "went and got her purse and she said to Darlene, 'Here's a paper I want you to have. It's the note,'" and that she "gave it to her in my presence." The witness identified Exhibit A as the note referred to; she testified that at one time in 1968 (the year in which she died) decedent said that she wanted her children to have everything divided equally. On cross-examination the witness added that decedent said that "it was the note on her farm." The note itself, Exhibit A, showed nothing upon its face or back to indicate a discharge.

■ Defendants offered the depositions of officials of four savings and loan associations located in Illinois. The purport of these was that decedent had created joint accounts of substantial sums in the names of herself and her daughters Velma or Twila or both; excluded Schedule G of decedent's estate tax return showed the transfers to those daughters and their families of similar sums. Objection was made to all of the depositions on the ground that they were of no probative value. The Court indicated that it would consider them subject to the objection. They were never ruled on specifically but were apparently considered to be irrelevant. Some question was raised in the evidence concerning the residence of plaintiff, as affecting the validity of her appointment as executrix. She had lived and taught school in Illinois for several years. The place for such an attack is in the proper probate court and, so far as this Court is concerned, plaintiff is the acting and appointed executrix. Defendants' motion for a directed verdict at the close of the case was taken with the case.

The Court entered a general finding of the issues in favor of plaintiff, neither party having requested findings of fact. It filed a memorandum opinion in which it stated in substance: that admittedly $30,000 of the principal of the note was unpaid, and that the burden of proving its discharge by some other method was on defendants; that the testimony of a delivery and relinquishment of the note was "unconvincing," for various reasons stated; that there was no "gift" of the note; that it was "readily inferable" that decedent had brought the note along for use in computing interest to be included in the tax returns. The substance of the memorandum was that the Court did not believe the testimony concerning a relinquishment, surrender, or "gift" of the note and, as stated, judgment was entered on the note accordingly. The Court did not make or indicate any finding of fraud, as defendants seem to suggest. The Court further considered that plaintiff had failed to prove Count 2 (for other money loaned), since the evidence offered was "pure hearsay."

We need not discuss the point made that this Court reviews the entire case upon both the law and the evidence since all are acquainted with the principle; but Rule 73.01, V.A.M.R., also provides that the judgment shall not be set aside "unless clearly erroneous," and that due regard shall be given to the opportunity of the trial court "to judge of the credibility of the witnesses." Essentially, defendants make these points: that the Court erred in placing the burden upon defendants to prove a discharge of the note, and especially to prove the surrender as a "gift," in view of the fact that defendants had possession of the note; that plaintiff failed to make a prima facie case when she failed to produce or explain the absence of the original note; that the judgment is erroneous because there was no evidence to overcome "the presumption" of renunciation raised by defendants' possession of the note; and that the Court erred in sundry respects in the admission and exclusion of evidence.

■ In a court-tried case under Rule 73.01 the Court is usually not so much concerned with the question of a "prima facie

case" as in a jury-tried case. The Court may render judgment "at or after the trial," and it has much discretion in the taking of evidence and in the order of evidence. If a plaintiff produces evidence which affirmatively destroys his case, the Court might, of course, terminate the proceedings at that point. We have no such situation here and we do not consider valid the argument that no prima facie case was made. It was entirely within the Court's discretion to hear all the evidence before it ruled the case. A photostatic copy of the note, furnished by defendants on court order, and the original mortgage were offered by plaintiff and received. Defendants had admitted the execution of both, and the original acknowledged and recorded mortgage was, in itself, proof of the execution and delivery of the note. Sanders v. Kaster, Mo., 222 S.W. 133. There was testimony that Darlene had, at the meeting, admitted a balance due on the note of $30,000, that "they admitted they owed it" (the note), "they said they owed $30,000 on the mortgage," and that defendants had stated that the note was not "paid." There was no dispute whatever about the execution, delivery or existence of the note. Defendants pleaded what they expressly designated as an affirmative defense, namely, that the note was "renounced by decedent, Isabel R. Kirchner, prior to her death," and that defendants had been discharged thereon. This was within the purview of Rule 55.10 on affirmative defenses. Normally, the defendant in a suit on a note has the burden of proving payment or other discharge. Madison v. Dodson, Mo.App., 412 S.W.2d 552; Meinholtz v. Lampert, Mo.App., 101 S.W.2d 503; Tilley v. Tracy, Mo.App., 128 S.W.2d 636; Johnson v. Johnson, 352 Mo. 787, 179 S.W.2d 605. Defendants rely solely upon the fact that they had possession of the note and say that this put the burden on plaintiff to prove that the note was an "asset" of the estate and had not been renounced. Under the facts here we decline to so hold. The pleadings established the execution of the note; plaintiff's evidence verified this and

showed the nonpayment of $30,000 of the principal and that such was due and "owed"; renunciation was stated as an affirmative defense and defendants were as much required to assume the burden and prove this as they would be to prove payment. Defendants have cited no cases holding that mere possession of a note shifts the burden of proof, so as to relieve defendants of proving an affirmative defense. We have examined defendants' cited cases. In one, Finch v. Heeb, Mo.App., 131 S.W.2d 146, it was held that plaintiff had the burden to prove the liability of three individuals who signed the note of a fraternal lodge as "trustees." The case had nothing to do with possession of the note, nor did Roth v. Roth, Mo.App., 142 S.W.2d 818, also cited. In Lines Music Co. v. Brittell, Mo.App., 30 S.W.2d 781, it was held: that possession by the maker of a note marked "*paid*" raised a presumption of payment, which plaintiff had then contradicted by its evidence, thus sustaining its burden of proceeding; and that thereupon the burden of proof, which had never shifted, required defendant to prove the payment. The facts and holding there do not aid the present defendants. The facts in Algeo v. Stewart, 222 Mo.App. 1003, 7 S.W.2d 470, brought the case within the terms of our statute on cancellation. Section 401.123, RSMo 1959, V.A.M.S. Under the facts of our case we do not deem it material that plaintiff offered in evidence the photostatic copy instead of the original note, and there was no error in receiving it. The copy had been supplied by defendants and there never was any controversy about the existence of the note. The sole issue arose from the affirmative defense.

Since the trial court decided the case on all the evidence and we review it upon all the evidence, we are not so much concerned with the "burden of proof" as we are with defendants' burden of convincing the trial court on their affirmative defense. The question is " 'whether the decree rendered was that which should have been rendered in the light of the entire case as

disclosed by the record.' McClintock on Equity, § 19." Appellate Review of Cases Tried Without a Jury. Judge Laurance M. Hyde. Vol. 26, Journal of Missouri Bar, Feb. 1970, p. 73. It seems obvious that the Court found against defendants because it did not believe the evidence of a "renunciation" and not because they, technically, had the burden of proof. In essence, the note was proved up, the amount unpaid was proved up, and the Court did not accept (or believe) the evidence of a surrender or renunciation. For all practical purposes that ended the matter, burden or no burden.

 Defendants' basic theory was that of a "renunciation" under our statute. Section 401.122, RSMo 1959, V.A.M.S. (the statute in effect in 1965), is as follows: "The holder may expressly renounce his rights against any party to the instrument before, at or after its maturity. An absolute and unconditional renunciation of his rights against the principal debtor made at or after the maturity of the instrument discharges the instrument. But a renunciation does not affect the rights of a holder in due course without notice. A renunciation must be in writing, unless the instrument is delivered up to the person primarily liable thereon."[1] The doctrine has been recognized in Missouri cases. Roth v. Roth, Mo.App., 142 S.W.2d 818; Barber v. Mallon, Mo.App., 168 S.W.2d 177; Nelson v. Hudson, 221 Mo.App. 211, 299 S.W. 1111. As said in Nelson, it is a gratuitous abandonment or giving up of a right, and does not require a consideration. The doctrine of renunciation apparently came from the English Law Merchant, and was incorporated into the Negotiable Instruments Law of our states. If the trial court had accepted the full import of Mrs. Ruckman's evidence, it could conceivably have found that there was a renunciation and thus a discharge of the note. It did not do so, but obviously rejected her testimony. Thus, the Court stated: "Their defense is that Mrs. Kirchner gave them the note, intending thereby to relinquish the debt and treat it as paid. I am not impressed by that story. The account of the transaction given by the single witness who testified to it is unconvincing * * *"; it later referred to the "story" as "incredulous." The Court proceeded to give various reasons why it thought the testimony was improbable. We need not repeat them here. The point is that it did not accept that testimony. Allowing due deference to the opportunity of the trial court to determine credibility, we agree with its finding. That really decides the case. It is immaterial that this evidence was not "contradicted"; the Court had the right to disbelieve and reject it just as a jury may do, and the defense was not sustained. It is true that the Court referred at times to a "gift" of the note; probably the use of the term was inadvertent, for the theory of renunciation had been pleaded and undoubtedly argued. A renunciation must be a voluntary, full and complete relinquishment of the note and, as a practical matter, its elements would differ little, if any, from those of a gift; for a gift is merely a voluntary transfer of something from one person to another without consideration. If, on all the evidence, the Court did not believe the evidence of such a transfer, but did believe the note was effective and overdue, it thereby found against any renunciation and, in such event, it is immaterial where the burden of proof was placed or should have been placed. The trial court, and we, review all the evidence and find the facts; it found, and we find, that there was no discharge of the note. From another point of view, even the testimony of the witness Ruckman was not entirely clear in establishing a complete *surrender* of the note.

 There remain the points concerning the admission and exclusion of evidence; such points are seldom decisive in

---

1. So far as we are concerned here, the only difference in Section 400.3–605 of the present Uniform Commercial Code is the substitution of "surrender" for "delivered up."

a court-tried case. Counsel complain that the objections to the testimony and competency of the defendants, based upon the Dead Man's Statute (§ 491.010, RSMo 1969, V.A.M.S.), were either premature or insufficient. We have examined the objections and find that those which were sustained were clear enough to apprise the Court of the purport and meaning of the objections and this was sufficient. We have discussed the admissibility of the photostatic copy of the note. The acknowledged and recorded mortgage was clearly admissible as additional proof of the note, if for no other reason. Exhibit 3, the affidavit of decedent concerning her accounts with her daughters, was excluded and defendants can have no complaint of that. The Court excluded the schedules from the estate tax return of the decedent as having no probative value on any pleaded issue. Presumably it treated the depositions of the savings and loan officials in the same manner, although it made no ruling. Defendants' theory, as already stated, was that these things showed substantially greater distributions to the other two daughters and that the relinquishment of the note would tend to equalize the situation; and thus, that the proffered evidence was corroboratory. The excluded evidence had no direct probative effect on the one real issue, i. e., whether the note was due or discharged, and it was within the Court's discretion to exclude it. In our own view we find that even were that evidence considered it would not change the result. And with Mrs. Ruckman's evidence disbelieved there was nothing left to be corroborated. There is no reversible error in the exclusion of evidence in a court-tried case where the evidence is in the record and may be considered by the appellate court. Defendants say also, advancing sundry reasons, that the Court erred in not accepting the evidence of Mrs. Ruckman, since it was uncontradicted, and that this would have fully sustained any burden of the defendants. The trial court is the arbiter of the facts in a jury-waived case; it may believe or disbelieve oral evidence, and the fact that it may be uncontradicted is not in any way decisive.

On the whole record, and allowing deference to the trial court's findings on credibility, we find the issues of fact and law on Count I for plaintiff and against the defendants. Count II has been fully disposed of. The judgment is affirmed.

PER CURIAM:

The foregoing opinion by HENRY I. EAGER, Special Commissioner, is adopted as the opinion of the Court.

MORGAN, P. J., HENLEY and DONNELLY, JJ., and SCHOONLAUB, Special Judge, concur.