James H. DICKINSON, Appellant,

v.

Verlea DICKINSON, Respondent.

No. WD 60081.

Missouri Court of Appeals, Western District.

Oct. 31, 2002.

---

Bruce A. Bailey, Warrensburg, for appellant.

John B. Neher, Lexington, for respondent.

Before HARDWICK, P.J., ELLIS, C.J., and HOLLIGER, J.

LISA WHITE HARDWICK, Judge.

James Dickinson appeals from the trial court's judgment denying his request for a constructive trust on assets derived from the estate of his aunt, Delpha Dickinson. He claims the court erred in: (1) determining Delpha was not unduly influenced to transfer all of her assets into joint ownership with James' brother, Harold Dickinson; (2) determining that Delpha's testamentary intent, as expressed in her 1977 will, did not continue until her death in 1991; and (3) in refusing to admit hearsay evidence regarding Delpha's testamentary intent and competency. Finding no error, we affirm.

## Facts and Procedural History

Delpha Dickinson died on November 15, 1991, at the age of 95. She never married and had lived alone in the Kansas City area for many years. In 1977, Delpha executed a Last Will and Testament naming her niece, Harriett Dickinson Benedict, and her three nephews, Harold Dickinson, Gary Dickinson, and James Dickinson, as the equal beneficiaries of her estate. Delpha named James and Harold as co-executors of her Will.

On August 27, 1984, Delpha wrote a letter to James and Harriett affirming her testamentary intent to equally divide her estate among the niece and three nephews. In December 1984 and January 1985, she gave equal gifts of $2,500 to each of her nephews and niece.

While none of the beneficiaries lived near Delpha, they all visited her periodically. In 1990, James noticed Delpha was more reluctant to leave her house and was becoming increasingly forgetful and confused about her financial responsibilities. For example, during visits with Delpha, James found some utility bills she had underpaid and others she had overpaid. He found her social security checks that had not been deposited. Delpha was confused about the amount of postage needed on a letter. In 1991, she requested an accountant to prepare her annual tax return after she forgot that James had already taken her to H & R Block to have the returns completed.

James shared his concerns about Delpha with his brother, Harold. In February 1991, Harold and his wife, Verlea, accompanied Delpha to her attorney's office to obtain a durable power of attorney and a living will. Delpha designated Harold as

her attorney-in-fact with Verlea named as the alternate.

That same day, Harold accompanied Delpha to her bank and savings institutions in the Kansas City area. Delpha agreed to have Harold's name placed on her checking account and on six certificates of deposit as a joint tenant with right of survivorship. Thereafter, all of Delpha's mail was forwarded to Harold, and he arranged for Delpha's social security checks to be direct deposited into their joint checking account. In April 1991, Delpha executed a warranty deed for her house naming Harold and Verlea as joint tenants with right of survivorship.

Delpha continued to reside by herself until her death on November 15, 1991. Her 1977 will was never probated. Harold and Verlea retained an attorney for representation in the sale of Delpha's house, which they acquired by right of survivorship. On June 4, 1992, the $52,819.15 net proceeds from the sale of the house were deposited into Harold and Verlea's joint savings account at First National Bank of Carrollton. Those proceeds and additional funds obtained through the sale of some of Delpha's personal property netted a total of $80,000, of which the attorney distributed $30,000 to James, $25,000 to Gary, and $25,000 to Harriett. There was no distribution of the checking account or certificates of deposit which Delpha transferred into joint ownership with Harold in February 1991.

Harold died in May 1993. A year later, on May 24, 1994, James filed a Petition for Constructive Trust against Harold's widow, Verlea. The petition alleged Verlea was unjustly enriched as a result of Harold's fraudulent conduct, undue influence, and breach of his fiduciary relationship with Delpha. James contended Delpha's estate was valued at approximately $240,000, and that she intended that amount to be equally divided among her niece and three nephews. He sought a constructive trust over all the assets which Verlea "derived from Delpha" and an order dividing those assets equitably among Delpha's heirs.

After two days of trial in January 2001, the court denied the constructive trust claim and entered judgment in favor of Verlea. The trial court made the following findings to support its conclusions that Harold's conduct was neither fraudulent, unduly influential, nor a breach of his fiduciary responsibilities to Delpha:

During the last couple of years of Delpha's life, she began to show her age and became confused about her daily chores and in general became more forgetful. However, Delpha continued to reside by herself until her death, and on February 22, 1991, executed a Durable Power of Attorney and a Living Will and also transferred her bank accounts into joint ownership with Harold Dickinson. The Power of Attorney and Living Will were prepared and notarized at an attorney's office. There is no evidence to indicate that at the time Delpha executed her Power of Attorney or placed the bank accounts in joint ownership with Harold Dickinson that she was incompetent or subject to any undue influence by Harold Dickinson.

Plaintiff claims that Harold Dickinson was to distribute Delpha's assets equally among his siblings and himself after Delpha's death and Delpha had expressed this in her Will providing that each of them would share equally and had also stated this in a letter to the Plaintiff. Further, Delpha had given the Plaintiff and his siblings each an equal amount of cash years earlier. However, the Will was executed in 1977 and the letter and gifts were executed in the 1980's. There is no evidence that

this intent continued into the 1990's or that this was Delpha Dickinson's intent at the time that she placed the accounts into joint ownership with Harold Dickinson. Further, there is no evidence that Harold was aware of Delpha's earlier intent during the 1980's and specifically no evidence that Harold was advised to share the joint accounts equally with his siblings after Delpha Dickinson's death. James appeals.

### Standard of Review

We must affirm the trial court's judgment unless it is unsupported by the evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Braden v. von Stuck,* 950 S.W.2d 489, 491 (Mo.App. W.D.1997). We accept as true all evidence favorable to the prevailing party and all inferences drawn therefrom, disregarding all contrary evidence. *Id.* at 492. Conflicting evidence is resolved in favor of the trial court's determination, as we must defer to the trial court's assessment of the credibility of witnesses. *Id.* at 491.

### Evidence of Undue Influence

■ In his first point on appeal, James contends the trial court erred in concluding that Harold did not exert undue influence and coerce Delpha to transfer her assets into joint ownership. He argues the evidence of Harold's conduct created a presumption of undue influence, which Verlea failed to rebut. *Davis v. Pitti,* 472 S.W.2d 382, 388 (Mo.1971). James claims the court's denial of the constructive trust was against the weight of a evidence and an erroneous application of the law regarding undue influence.

■ A constructive trust is an equitable remedy available when "a party has been wrongfully deprived of some right, title or interest in property as a result of fraud or violation of confidence or faith reposed in another." *Estate of Davis,* 954 S.W.2d 374, 379 (Mo.App. E.D.1997). One circumstance where the court can impose a constructive trust is where a party had "undue influence" over a grantor's financial decisions. *Id.*

James' allegation of undue influence relates to the checking account and certificates of deposit that Verlea transferred into joint ownership with Harold in February 1991. The transfers were governed by § 362.470.1 RSMo (1986), which provides that the deposit of bank funds as joint tenants with a right of survivorship shall be "conclusive evidence" of the depositor's intent, "in the absence of fraud or undue influence." The statute imposed a presumption that Delpha intended the jointly held accounts to pass to Harold upon her death. *Braden,* 950 S.W.2d at 492. That presumption could be rebutted with evidence that Harold exercised undue influence over Delpha's decision to transfer her assets into joint accounts. *Fix v. Fix,* 847 S.W.2d 762, 765 (Mo.banc 1993).

To prove undue influence warranting a constructive trust, James had to establish that Harold had a coercive influence on Delpha which was greater than that of a regular family relationship. *Davis,* 954 S.W.2d at 379. Mere suspicion of undue influence is insufficient. *Id.* at 380. The evidence must show that Harold's "over persuasion or coercion" substituted his will in place of Delpha's free will. *Id.* at 379–80. To warrant imposition of a constructive trust over Verlea's assets derived from Delpha, the evidence of Harold's fraud must be so clear, cogent and convincing as to exclude every reasonable doubt in the mind of the trial court. *Fix,* 847 S.W.2d at 765.

At trial, James attempted to show Harold's coercion of Delpha by circumstantial evidence. The testimony showed that Ha-

rold assisted Delpha in transferring all of her assets into joint ownership with him during a two-month period in early 1991. These transfers occurred shortly after James advised Harold of events which indicated Delpha's increasing inability to manage her financial affairs. The transfers were inconsistent with Delpha's testamentary intent—as expressed in her 1977 will, a 1984 letter, and through financial gifts in 1984 and 1985—to equally divide her estate among her niece and three nephews. Based on these facts, James argues Harold took advantage of Delpha's increasing state of confusion and apparent mental incapacity by coercing her to change her testamentary intent and leave him in total control of her assets.

This circumstantial evidence was rebutted by several witnesses who testified Delpha was independent, intelligent, well read, made her own decisions, and directed her own financial affairs up until her death. While she was less inclined in later years to venture out of the house alone, she lived on her own for the last ten years of her life and it was Delpha who had asked for Harold's help with her finances in early 1991. The witnesses agreed Delpha's physical health was fine up until the date of her death. There was no medical or psychological diagnosis of her as mentally incompetent.

During his trial testimony, James acknowledged Delpha had a right to change her testamentary plan. He was not present during any of the 1991 transactions at issue. James had no knowledge of Delpha's mental state during those transactions and, as far as he knew, all of the transactions may have been her own idea. James testified he was unaware of any false statements Harold may have made to coerce Delpha, nor of any agreement between them about the manner in which

Delpha's property would be distributed upon her death.

There was also testimony about Harold's good reputation as an electrician with his own business in Carrollton for thirty-five years. Harold was active in the community, the church, and had served as Mayor of Carrollton for three terms. James admitted he had trusted Harold throughout his life.

Harold's widow, Verlea, testified at trial. She had little or no knowledge of any of the transactions at issue. She was not present at the banks when Delpha transferred her financial assets into joint accounts with Harold. Verlea had no knowledge of what happened to the funds in the joint accounts after Delpha's death.

Based upon the totality of evidence, the trial court concluded James failed to prove Delpha was "subject to any undue influence by Harold" at the time she placed her financial assets in joint ownership. This conclusion is substantially supported by the record. Although James presented testimony that Harold assisted Delpha in carrying out transactions that appear contrary to her testamentary intent expressed years earlier, we find no evidence that Harold coerced Delpha or substituted her free will with his own. Viewed in a light most favorable to the judgment, the evidence indicates Delpha's trust in Harold was long-standing such that she named him co-executor of her will in 1977 and in 1991 gave him durable power of attorney and joint ownership of her financial assets. Delpha personally endorsed each of the 1991 transactions, thereby indicating her desire to change her prior testamentary intent. *Estate of Davis*, 954 S.W.2d at 382. Harold's mere involvement and presence during the transactions does not support a finding of undue influence. *Id.* at 380.

As James points out, a presumption of undue influence can arise in joint account cases where there is a showing of: (1) a confidential and fiduciary relationship; and (2) some additional evidence from which undue influences can be inferred. *Robertson v. Estate of Zimmerman*, 778 S.W.2d 805, 809 (Mo.App. E.D. 1989). However, the trial court determined here that the circumstantial evidence did not allow an inference of undue influence. This factual determination was not against the weight of the evidence, and the court did not erroneously apply the law in determining the evidence was insufficient to create a presumption of undue influence. Point I is denied.

## Evidence of Continuing Testamentary Intent

In his second point on appeal, James contends the trial court erroneously applied the law in requiring him to prove that Delpha's testamentary intent, as expressed in her 1977 Will, continued until her death in 1991. James argues there was "no evidence ... that Delpha ever modified her Will" and, thus, the court could reasonably assume her testamentary intent was unchanged without affirmatively requiring him to prove that fact.

This argument ignores that Missouri law permitted Delpha to establish a statutory joint account as a substitute for her previously executed Will. *Estate of Hayward*, 884 S.W.2d 10, 14 (Mo.App. W.D.1994). The deposit of funds into a joint account pursuant to § 362.470.1 is "conclusive evidence" of the depositor's intent that the funds should pass to the co-owner of the account upon the depositor's death. *Braden*, 950 S.W.2d at 492. Once a joint account is established, a depositor's prior testamentary intent becomes irrelevant in determining ownership of the assets in the account. *See Estate of Davis*, 954 S.W.2d at 382.

Delpha's transfer of her assets into joint ownership accounts established a presumption that she intended Harold to become the sole owner of those assets upon her death. *Braden*, 950 S.W.2d at 492. Given this presumption, the trial court did not err in requiring James to present evidence that Delpha's testamentary intent (to equally divide her estate among her niece and three nephews) continued after she transferred her assets into joint ownership with Harold. Delpha's prior testamentary intent became irrelevant in 1991 when she effectively substituted her 1977 Will with the joint accounts. James therefore had to prove that Delpha was either unduly influenced by Harold or that Delpha subsequently revoked the joint accounts, thereby arguably allowing her original testamentary intent to continue. Because James failed to invalidate Delpha's transfers to the joint accounts on either ground, the trial court properly rejected his claim. Point II is denied.

## Evidentiary Issues

In his third and fourth points on appeal, James claims the trial court erred in refusing to admit Exhibits V and X. Exhibit V is an August 23, 1984 handwritten letter from Delpha to her niece, Harriett, regarding the status of Delpha's Will following the death of her attorney. Exhibit X is the text of remarks given by a minister at Delpha's funeral. Although the minister was not personally acquainted with Delpha, he stated that in her later years "she began to lose her memory, and with it, some of the independence she had enjoyed...."

The trial court's evidentiary rulings are entitled to great deference and will not be overturned absent an abuse of discretion. *Lay v. P & G Health Care, Inc.*, 37

S.W.3d 310, 331 (Mo.App. W.D.2000). We must determine whether the trial court abused its discretion by refusing to admit evidence and not whether the evidence was admissible. *Id.* This court will not reverse a judgment based on the exclusion of evidence unless appellant demonstrates the evidence would have materially affected the merits of his cause of action. *Id.*

■ The trial court sustained a hearsay objection to Exhibit V, the August 23, 1984 letter from Delpha to Harriett regarding Delpha's will. James contends the letter was not offered for the truth of the matter asserted but to show Delpha's testamentary intent and, therefore, was admissible under the "state of mind" exception to the hearsay rule.

Regardless of the letter's admissibility, we note that ample evidence of Delpha's testamentary intent was presented at trial. A copy of Delpha's "Last Will and Testament" was introduced into evidence. The court also admitted an August 27, 1984 letter from Delpha to James and Harriett, in which she affirmed her testamentary intent. James testified that Delpha awarded gifts of $2,500 to her niece and three nephews in 1984 and 1985, consistent with her intent to divide her estate equally among those beneficiaries. No prejudice resulted from the trial court's refusal to admit Exhibit V because it was merely cumulative evidence of Delpha's intent prior to the time she placed her assets into joint ownership with Harold. *State v. Simpson,* 908 S.W.2d 839, 843 (Mo.App. S.D.1995). Moreover, none of the evidence of testamentary intent materially affected the trial court's ruling because, as discussed *supra,* prior intent is irrelevant in determining the validity of transfers into joint accounts. *Braden,* 950 S.W.2d at 494.

■ Similarly, we find no prejudicial error in the trial court's refusal to admit the text of a minister's funeral remarks concerning Delpha's memory loss in her later years. The court heard extensive testimony from James on this subject and made specific findings that by 1990 Delpha showed confusion about her daily chores and became more forgetful. The court concluded that evidence of these lapses was insufficient to prove Delpha was coerced to alter her testamentary plan by placing her assets in joint ownership accounts with Harold. Thus, additional evidence of Delpha's forgetfulness would have had no material affect on the trial court's decision. Points III and IV are denied, as we find no abuse of the trial court's discretion in excluding Exhibits V and X.

The judgment of the trial court is affirmed.

All concur.