**Jane WATERMANN,**
**Plaintiff/Appellant,**

v.

**ELEANOR E. FITZPATRICK REVO-CABLE LIVING TRUST, Wallace W. Fitzpatrick, Individually and as Trustee of the Eleanor E. Fitzpatrick Revocable Living Trust, Bonita Fitzpatrick, Leroy G. Fitzpatrick, Paulette Fitzpatrick, Deric Fitzpatrick, Dean Fitzpatrick, and Wayne C. Fitzpatrick, Defendants/Respondents.**

No. ED 96541.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 19, 2012.

Joseph V. Neill, St. Louis, MO, for appellant.

Steven P. Kuenzel, Colleen M. Kuenzel, Eckelkamp Kuenzel LLP, Washington, MO, Frederick H. Schwetye, Union, MO, for respondents.

KATHIANNE KNAUP CRANE, Presiding Judge.

Plaintiff, the beneficiary of a trust, filed a lawsuit against the trust, the trustee, the trustee's wife, and the remaining trust beneficiaries to obtain an accounting, removal of the trustee, and imposition of a constructive trust on the ground that the settlor of the trust created the trust and transferred assets to it as a result of the undue influence of the trustee and his wife (Count I) and to obtain damages based on tortious interference with inheritance (Count II). Defendants filed a counterclaim seeking repayment under the trust's anti-contest clause of a $25,000 distribution to plaintiff. After a bench trial, the trial court entered judgment in defendants' favor on Counts I and II and awarded defendants $24,999 on their counterclaim. Plaintiff appeals, contending that the trial court misapplied the law of undue influence. We affirm.

### FACTUAL BACKGROUND

*The Parties*

The settlor, Eleanor E. Fitzpatrick, died on August 13, 2007. She was survived by her daughter, plaintiff Jane Watermann, and her sons, defendant Wallace Fitzpatrick (Wallace),[1] who is married to defendant Bonita Fitzpatrick; defendant Wayne Fitzpatrick; and defendant Leroy Fitzpatrick, who died in April 2008. Leroy Fitzpatrick was survived by his wife, defendant Paulette Fitzpatrick, and his sons,

---

1. We will refer to Wallace Fitzpatrick by his first name since all of the defendants have the same last name. No disrespect is intended.

defendants Deric Fitzpatrick and Dean Fitzpatrick.

*The Settlor's Property Dispositions*

On June 26, 1996, the settlor executed a will that left her assets in equal shares per stirpes to her four living children, and she appointed Wallace as her personal representative. She also executed two beneficiary deeds to real property in St. Charles and Franklin Counties that provided that upon the settlor's death, the properties would be divided in four equal shares among her four children. The settlor also executed a durable power of attorney to Wallace.

On May 2, 2007, the settlor sent a written request to Citizen's Bank to remove plaintiff as a beneficiary on three certificates of deposit (CDs) belonging to the settlor. The settlor included a letter describing her reasons for removing plaintiff from the CDs.

On May 8, 2007, the settlor met with attorney Robert Zick at his office to discuss her estate plan. Wallace and his wife were at the meeting. Mr. Zick testified that if family members accompany an elderly person to his office, he is careful not to let them preempt or override the conversation, and he makes sure that he hears what his client wants directly from the client. He testified that the settlor wanted to exclude plaintiff from receiving a share of the St. Charles property because of her longstanding, troubled relationship with plaintiff. Mr. Zick testified that he ensured that the settlor's statement about excluding plaintiff did in fact come from the settlor, and he added: "I was very confident that this was her intention. There was no doubt in my mind that—that she was lucid and able to articulate why on her own."

On May 9, 2007, a Citizen's Bank customer service representative went to the settlor's home to meet with the settlor about her request to remove plaintiff as a beneficiary on the CDs. The settlor, who was alone, explained that she wished to remove plaintiff from the CDs because they had not been on good terms and plaintiff had not been contacting her. After the representative went over the affidavit removing plaintiff from the three CDs with the settlor and confirmed that the settlor understood it and agreed with it, the settlor executed the affidavit. The representative testified, "From the conversation I had with her, she was doing it totally on her own."

Mr. Zick prepared a durable power of attorney, a living will declaration, a last will and testament, and the Eleanor E. Fitzpatrick Revocable Living Trust, naming Wallace as trustee. He also prepared beneficiary deeds that revoked the 1996 beneficiary deeds and conveyed the settlor's interests in the St. Charles and the Franklin County properties to the Trust. The Trust provided that upon the settlor's death, Wallace, as trustee, had discretion to sell the St. Charles property, and that the net proceeds from the sale would be distributed in three equal shares to Wallace, Leroy Fitzpatrick, and Wayne Fitzpatrick. The Trust provided that Wallace had discretion to sell the Franklin County property, and divide the proceeds into four equal shares to be distributed to the settlor's four children, including plaintiff. The Trust further provided that the residue of the trust estate was to be divided into equal shares, one share for each of the settlor's four children, including plaintiff. The Trust also contained an anti-contest clause that provided that if any beneficiary contested the Trust, the settlor's capacity, or the settlor's estate plan, all provisions of the Trust in favor of that beneficiary would be cancelled, and the beneficiary would be awarded one dollar.

On May 15, 2007, Mr. Zick, accompanied by a witness and a notary, hand-carried these documents to the settlor, who, because of her foot problems, was seated in a car in the office parking lot, so that she would not have to walk into the office. Wallace was also in the car. Mr. Zick went over each of the documents with the settlor before she signed them. Mr. Zick specifically went over the provisions with the settlor that divided the St. Charles County property in thirds and the Franklin County property and residue of the estate in fourths.

Mr. Zick testified that he did not believe that the settlor was "under anyone's undue influence" at either the May 8 meeting or May 15 meeting. On cross-examination, defense counsel read the definition of undue influence from the Missouri Approved Instructions (MAI) and asked Mr. Zick: "In your opinion, using that definition out of MAI 15.03,[2] do you have an opinion whether [the settlor] was under anybody's undue influence at that time?" Mr. Zick responded that he did, and continued:

> THE WITNESS: With that definition and any other reasonable definition of 'undue influence,' I do not believe she was under anyone's undue influence. Had she been, I would not have appreciated if—if—if—If this instruction had some—come solely from her son or Bonnie and—and she was not able to independently articulate it to me, I would have, number one, kicked them out of the room and then ascertained whether it was coming from her or not. I did not feel it was necessary to do that. And had that happened and had I not been able to confirm it that it was her intention, I would not have proceeded. I take very seriously my obligation to make sure that I'm meeting the testator

or the grantor's intention in—in doing what I'm asking—being asked to do.
Q. And I'm going to narrow that down, that question now, very specifically, although it's obviously included in my previous line of questioning. In your opinion, on either that first meeting on May the 8th or the signing meeting on May the 15th, did Eleanor—was Eleanor Fitzpatrick, in your opinion, under the undue influence specifically of either Wally Fitzpatrick or Bonnie Fitzpatrick?
A. Absolutely not.

Diane Kluesner was the settlor's home healthcare nurse who cared for the settlor from October to December 2006 and from March through May 2007. In addition to testifying to the settlor's mental competency, Ms. Kluesner testified that the settlor never complained that Wallace or his wife was overbearing to her or making her do anything against her will. Rather, she testified that the settlor was "so grateful" to them because they spent time with her and changed the dressing on her wound, which allowed her to remain in her own home rather than in a nursing home.

*Judgment*

The trial court entered judgment in defendants' favor. In its findings, it considered the evidence relating to the settlor's competency and whether the settlor had been subject to undue influence. The trial court found that plaintiff's claim that the settlor was incompetent was based upon plaintiff's observations that:

> a. Eleanor was unable to get out of the car she was in, to execute her Trust and other estate planning documents;
> b. Eleanor was nervous about the impending amputation of her leg, and
> c. Eleanor's vision and hearing were failing.

---

2. Now MAI 15.02 (2012 7th ed.).

It found the testimony of the settlor's lawyer, Mr. Zick; her internist, Dr. Tim Baker; her home healthcare worker, Ms. Kluesner; and her bank's customer service representative to be credible and to support a finding that the settlor was competent when she executed the documents in 2007.

The trial court found that plaintiff's claim of undue influence was based on plaintiff's observations that:

a. Wallace and Bonita saw Eleanor every day;

b. Bonita scheduled Eleanor's appointment with Mr. Zick, to discuss Eleanor's estate planning, and

c. Wallace and Bonita accompanied Eleanor to her initial meeting with Mr. Zick.

The trial court found credible Mr. Zick's testimony that the settlor explained in detail why she was removing plaintiff as a beneficiary from part of her estate, that she executed the documents of her own free will, and that he saw nothing to suggest that anyone was exerting undue influence over her. It also found that Mr. Zick's testimony supported its finding that there was no undue influence.

The court concluded its judgment with the following findings and conclusions:

30. In order for Plaintiff to prove that Defendants, or any of them, exerted undue influence over Eleanor, she must show overpersuasion or coercion which substituted Defendants' will for Eleanor's free will. *Ruestman v. Ruestman*, 111 S.W.3d 464, 468 (Mo.App.2003).

31. As to the issue of Eleanor's competence, the Court finds that there is no evidence that Eleanor was not competent to make the estate planning decisions she made. Dr. Baker's testimony, along with the testimony of other witnesses, supports a finding that, up until the very end of her life, Eleanor was able to understand the ordinary affairs of life, was able to understand the nature and extent of her property, was able to know the persons who were the natural objects of her bounty, and that she could intelligently weigh and appreciate her natural obligations to those persons, which proves she was of 'sound and disposing memory,' as that phrase is described in MAI 15.01. (Please note: this finding is based upon Dr. Baker's observations over many years treating Eleanor, and not any legal conclusions to which he might have testified) In other words, the evidence suggests that Eleanor had what she thought were good reasons for changing her estate plan, that she knew what she wanted to do, and she did it.

32. The testimony of Mr. Zick and Ms. Kluesner support a finding that no one either overpersuaded or coerced Eleanor to do her new estate plan, or, for that matter, anything else. Again, she seemed to have clearly made up her own mind as to what she wanted to do, and then did it.

This Court finds that neither Wallace and Bonita Fitzpatrick nor anyone else exerted undue influence on Eleanor Fitzpatrick, as she prepared her estate plan, including the Trust, beneficiary deeds, and Power of Attorney. The Court also specifically finds that Eleanor was competent at the time of her first meeting with Mr. Zick, and when she executed the documents with him.

By contesting Eleanor's estate plan, Plaintiff has subjected herself to the provisions of Article IV.F of the Trust. As a consequence of her challenge, all of the provisions of the estate planning documents in Plaintiff's favor are revoked. Plaintiff's share of Eleanor's es-

tate, per Article 1V.F, is now one dollar ($1.00).

Plaintiff appeals from this judgment.

## DISCUSSION

### Standard of Review

■ On review of a court-tried case, we will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Rule 84.13(d); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Dickinson v. Dickinson*, 87 S.W.3d 438, 442 (Mo.App.2002). We accept as true the evidence and inferences favorable to the prevailing party and disregard all contrary evidence. *Dickinson*, 87 S.W.3d at 442. We defer to the trial court's resolution of conflicts in the evidence and its assessment of witness credibility. *Id.*

### Analysis

■ In her sole point on appeal, plaintiff contends that the trial court misapplied the law of "mental competency" to a claim of undue influence, which, she concludes, caused the court to ignore the overwhelming weight of the evidence of undue influence when it denied relief to plaintiff.

■ Plaintiff first argues under this point that the trial court's discussion of the evidence of the settlor's competency and its conclusion that she was competent demonstrate that it was applying the law relating to mental competency and not the law of undue influence. We disagree. It is true that a finding of mental competency does not preclude a finding of undue influence. *Duvall v. Brenizer*, 818 S.W.2d 332, 335 (Mo.App.1991). However, a settlor's mental and physical condition is "highly material" to the issue of undue influence because it would indicate whether the settlor was susceptible to undue influence.

*Ruestman v. Ruestman*, 111 S.W.3d 464, 479 (Mo.App.2003); *Robertson v. Robertson*, 15 S.W.3d 407, 413 (Mo.App.2000); *see also Landers v. Sgouros*, 224 S.W.3d 651, 661 (Mo.App.2007); *Wingate v. Griffin*, 610 S.W.2d 417, 420 (Mo.App.1980). The trial court did not misapply the law by considering evidence of the settlor's competency in its findings and conclusions and finding her to be mentally competent.

■ Plaintiff next argues under this point that the trial court failed to recognize that she established, by overwhelming evidence, the elements that give rise to a presumption of undue influence, and she contends that the court did not set out the elements that give rise to a presumption of undue influence in its judgment. This argument is unavailing in a court-tried case.

■ "Undue influence is that influence which by force, coercion, or overpersuasion destroys the free agency of the benefactor." *Tobias v. Korman*, 141 S.W.3d 468, 475 (Mo.App.2004); *see also Dickinson*, 87 S.W.3d at 442. The burden is on the plaintiff to prove undue influence. *Tobias*, 141 S.W.3d at 475.

■ A presumption of undue influence arises when substantial evidence shows: (1) a confidential or fiduciary relationship; (2) that the fiduciary obtained a benefit; and (3) some additional evidence that supports an inference of undue influence. *Duerbusch v. Karas*, 267 S.W.3d 700, 708 (Mo.App.2008). Through the use of this presumption, "Missouri places a prima facie case requirement upon the party alleging undue influence which once satisfied, allows the party to submit the case to the jury." *Duvall*, 818 S.W.2d at 335. Thus, in a jury-tried case, the court is required to determine if the plaintiff made a prima facie case when the defendant makes a motion for directed verdict at the close of plaintiff's case or at the

close of all the evidence. Further, when a plaintiff makes a prima facie case in a jury-tried case, the presumption "does not disappear upon the introduction of rebutting evidence;" rather, it raises an issue for the jury. *Disbrow v. Boehmer*, 711 S.W.2d 917, 925 (Mo.App.1986).

However, in a court-tried case, the trial court is not as concerned with the question of a "prima facie case" as it is in a jury-tried case. *Miller v. Gayman*, 482 S.W.2d 414, 417–18 (Mo.1972). In a court-tried case, the court has considerable discretion in the taking of evidence and in determining the order of the evidence, and it may hear all of the evidence before ruling on the case. *Id.* at 418. Further, even if a plaintiff makes a prima facie case, this does not mean that the plaintiff is entitled to recover. *Bach v. Standard Oil Co.*, 345 S.W.2d 144, 146 (Mo.1961). The fact that a plaintiff's evidence, if believed by the trial court, would make a prima facie case is not determinative on appeal. *Carlisle v. Keeling*, 347 S.W.2d 191, 195 (Mo.1961).

Thus, in a court-tried case, the court does not need to specifically analyze whether the plaintiff made a prima facie case, but must only determine whether the challenged action was taken as a result of undue influence, that is, such influence that by force, coercion, or overpersuasion destroys the free choice of the actor. *Tobias*, 141 S.W.3d at 475. Here, the trial court specifically set out the definition of undue influence in paragraph 30 of its judgment and applied it in paragraph 32 of its judgment. It did not misapply the law.

Plaintiff finally argues that the trial court ignored what she characterizes as overwhelming evidence of undue influence. She points to evidence of a confidential relationship between the settlor and Wallace, Wallace's receipt of a one-third rather than a one-fourth interest in the proceeds from the sale of the St. Charles property, and Wallace and his wife's active involvement when the changes were made to the settlor's estate plan.[3]

To warrant imposition of a constructive trust on the ground of undue influence, the evidence of fraud must be so clear, cogent, and convincing as to exclude every reasonable doubt in the mind of the trial court. *Dickinson*, 87 S.W.3d at 442. In a court-tried case, whether a person exercised undue influence over another is a factual determination for the trial court. *Blando v. Reid*, 886 S.W.2d 60, 66 (Mo. App.1994). We defer to the trial court's findings of fact as in any other court-tried case. *Id.*

The mere existence of a confidential relationship is not sufficient to compel a finding of undue influence. *Tobias*, 141 S.W.3d at 475 (citing *Robertson*, 15 S.W.3d at 413). "There must be facts and circumstances tending to show that undue influence was an active factor in the transaction." *Tobias*, 141 S.W.3d at 475 (citing *Robertson*, 15 S.W.3d at 413). "It is not undue influence for the beneficiary to exercise influence as long as it was not so coercive or importunate as to deprive the benefactor of his or her free agency." *Tobias*, 141 S.W.3d at 475 (citing *Robertson*, 15 S.W.3d at 415). Further, the evidence that the settlor revised her estate plan to revoke the beneficiary deed that gave plaintiff a one-fourth interest in the St. Charles property and executed a trust under which her remaining children would receive a one-third interest in the proceeds

---

3. Plaintiff also argues her version of events. We consider all facts in the light most favorable to the judgment and disregard contrary facts. *Blando v. Reid*, 886 S.W.2d 60, 65–66 (Mo.App.1994).

from the sale of this property does not necessarily compel a finding of undue influence. *See Tobias,* 141 S.W.3d at 476. Given the settlor's perception that she had a strained relationship with plaintiff and her lack of contact with plaintiff, it was not unreasonable for the settlor to give a greater share of her property to her other children, who had maintained contact and a relationship with her. Although this was a change from the settlor's 1996 plan, it was explained by the settlor's unhappiness with her relationship with plaintiff and not by any improper acts of Wallace or his wife. Finally, the evidence that Wallace and his wife made the appointment with Mr. Zick, drove the settlor to Mr. Zick's office, and were present at the meeting does not require a finding of undue influence. *See Dickinson,* 87 S.W.3d at 443; *Ryterski v. Wilson,* 740 S.W.2d 374, 376 (Mo.App.1987).

The trial court believed that the evidence that showed that the settlor's decision to not give plaintiff a one-fourth interest in the proceeds from the sale of the settlor's share of the St. Charles property was not caused by undue influence. The trial court did not misapply the law, and its findings are supported by substantial evidence. Point one is denied.

*Conclusion*

The judgment of the trial court is affirmed.

LAWRENCE E. MOONEY, J. and KENNETH M. ROMINES, J., concur.