Rosalie J. CIMA, et al., Appellants,

v.

Randy L. RHOADES, et
al., Respondents.

No. ED 97813.

Missouri Court of Appeals,
Eastern District,
Northern Division.

June 4, 2013.

Motion for Rehearing and/or Transfer
to Supreme Court Denied July
24, 2013.

Application for Transfer Denied
Oct. 1, 2013.

Jill R. Jackson, Columbia, MO, for appellants.

Louis Leonatti, Randall Baker, Mexico, MO, for respondents.

GARY M. GAERTNER, JR., Chief Judge.

### Introduction

Appellants appeal the trial court's judgment upholding a revocable trust and an amendment thereto, executed by Betty Virginia Rhoades. Appellants argue the overwhelming weight of the evidence established that the documents were the result of undue influence. We affirm.

### Background

Appellants Rosalie Cima, Donald Rhoades, Charles Rhoades, Dennis

Rhoades, and Kenneth Rhoades, are children of Betty Virginia Rhoades (Mrs. Rhoades). Respondents are Mrs. Rhoades' remaining three children [1]: Randy Rhoades (Rhoades), Betty Sue Herron (Herron), and Beverly Kibler. This case centers on a will and revocable trust Mrs. Rhoades executed in 2000 and amended in 2001, which replaced a 1982 will Mrs. Rhoades and her late husband had created. The revocable trust, executed on July 15, 2000, named all of Mrs. Rhoades' children as beneficiaries of the trust, except Respondent Beverly Kibler "for valid reasons not necessary to recite here." The trust also named Rhoades and Herron as successor trustees to Mrs. Rhoades and executors of Mrs. Rhoades' will. The trust assets consisted of three tracts of real estate as well as personal property of Mrs. Rhoades including bank accounts, stocks, bonds, and an automobile. Rhoades and Herron were also named Mrs. Rhoades' agents under a durable power of attorney executed by Mrs. Rhoades at the same time she created the trust.

On August 20, 2001, Mrs. Rhoades amended the trust to omit Appellants from inheriting any of the real estate or personal property assets of the trust. A provision allowing Appellant Dennis Rhoades an option to purchase certain real estate assets of the trust was also removed by this amendment.

Late in 2002, Mrs. Rhoades moved into a residential care facility. In 2003, Mrs. Rhoades underwent memory impairment testing and was diagnosed by her primary physician, Dr. Justin Jones, with Alzheimer's.

In 2007, Appellants filed a petition to set aside the 2000 revocable trust and the 2001 amendment thereto and to find a construc-

tive trust for Appellants. Appellants argued that Mrs. Rhoades lacked mental capacity to execute the amendment, both because she was mentally incompetent and because she was unduly influenced by Rhoades and Herron. Appellants additionally argued that Rhoades and Herron had violated their fiduciary duties in the management of trust assets and requested an accounting of the trust and removal of Rhoades and Herron as trustees.

At trial in 2011, Appellants presented evidence that during the year of 2000, they became concerned about Mrs. Rhoades' ability to drive and to handle her finances. In July of 2000, Rhoades took a copy of Mrs. Rhoades' existing will to James Beavers, an attorney, and let him know Rhoades and Mrs. Rhoades would come to see him about drafting a revocable trust. Mr. Beavers drafted the documents, and Mrs. Rhoades executed them on July 15, 2000. Appellants presented evidence that Rhoades and Herron then moved Mrs. Rhoades from Illinois to Missouri in September of 2000 and would not provide any contact information for their mother to the rest of their siblings. Herron testified that this was at Mrs. Rhoades' request. Herron provided daily assistance to Mrs. Rhoades, including cleaning her apartment, handling her finances, and taking her to doctors' appointments.

In October of 2000, Appellants, excluding Kenneth Rhoades, filed a petition in Illinois to be appointed guardians of their mother. Mrs. Rhoades was upset about this, and in February of 2001, attorney Brad Brett sent a letter on behalf of Mrs. Rhoades asking her children to dismiss the guardianship petition and promising they would all be treated equitably in her estate

---

1. This Court dismissed the appeal as to Respondent Mrs. Rhoades, who passed away on May 18, 2012, while the appeal was pending.

if they did so. The guardianship petition was later dismissed, but Mr. Brett testified Mrs. Rhoades never received an apology from her children who filed the petition.

Respondents presented testimony from Dr. Jones, who testified that based on his visits with Mrs. Rhoades in 2000 and 2001, in his opinion she was mentally competent to execute her estate documents on August 20, 2001. Respondents also presented testimony from two attorneys: Mr. James Beaver, who drafted Mrs. Rhoades' 2000 estate documents, and Mr. Brett, who drafted the 2001 amendment to the trust. Both testified they believed Mrs. Rhoades to be mentally competent at the time she executed the documents they prepared. Mr. Brett also had his assistant, Lois Keith, sit in on his meeting with Mrs. Rhoades and prepare a memorandum of her observations of Mrs. Rhoades. Ms. Keith noted that Mrs. Rhoades was able to name all of her children and their ages, and Mrs. Rhoades understood she was disinheriting some of her children and was able to name which ones. She was dressed appropriately, spoke clearly, and had very good handwriting. Ms. Keith believed Mrs. Rhoades understood what she was signing and observed that when Mrs. Rhoades asked Rhoades and Herron afterward how they felt about what she had done, they told her it was her decision and whatever she wanted to do was fine with them.

Appellants presented evidence from Dr. Simon Horenstein, a neurologist who reviewed Mrs. Rhoades' medical records. He opined that Mrs. Rhoades suffered from dementia as early as 1999, and therefore that she was not mentally competent to execute her estate documents in 2000 or 2001.

The trial court made its own findings and also adopted the findings of Mrs. Rhoades' Guardian ad Litem (GAL). These findings were that Respondents established with substantial evidence that Mrs. Rhoades had sufficient mental capacity to execute the amendment to the trust in 2001. The trial court further found that Appellants had presented no credible evidence of undue influence, and the GAL agreed Appellants did not meet their burden of proving by clear and convincing evidence that Mrs. Rhoades' will was overborne when she executed her estate documents in 2000 and 2001. The trial court denied Appellants' request for relief and granted Respondents their reasonable attorney's fees. This appeal follows.

*Standard of Review*

We will affirm the judgment in a court-tried case unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We accept as true evidence and reasonable inferences favorable to the prevailing party and disregard contrary evidence and inferences. *In re Wax*, 63 S.W.3d 668, 670 (Mo.App. E.D.2001). We also defer to the trial court's resolution of conflicting evidence and its credibility determinations. *Watermann v. Eleanor E. Fitzpatrick Revocable Living Trust*, 369 S.W.3d 69, 75 (Mo.App. E.D.2012).

*Discussion*

Appellants raise one point on appeal. They argue that the trial court erred by failing to apply a presumption of undue influence and therefore the judgment is against the overwhelming weight of the evidence. We disagree.

In a suit challenging the validity of a trust due to lack of mental capacity to execute such a document, the proponents of the document have the burden to establish a prima facie case of due execution

and of sound mind of the person executing the trust at the time it was executed. *See Dorsey v. Dorsey*, 156 S.W.3d 442, 446 (Mo.App. E.D.2005)(will contest); *Matter of Estate of Dean*, 967 S.W.2d 219, 222 (Mo.App. W.D.1998)(applying rules of deeds and wills to trusts). Once such a showing is made, the contestant must adduce substantial evidence that the settlor lacked mental capacity to execute the trust. *Matter of Estate of Dean*, 967 S.W.2d at 222.

Undue influence undermines a finding of mental capacity because it is "influence which by force, coercion, or overpersuasion destroys the free agency of the benefactor." *Tobias v. Korman*, 141 S.W.3d 468, 475 (Mo.App. E.D.2004). The contestant bears the burden of proving undue influence. *Kaiser v. Pearl*, 670 S.W.2d 915, 918 (Mo.App. E.D.1984). In Missouri, a presumption of undue influence arises when the following elements are present: (1) the existence of a confidential or fiduciary relationship between the settlor and the beneficiary, (2) the beneficiary is given a substantial benefit, and (3) the beneficiary was active in procuring execution of the document conferring the benefit. *Vancil v. Carpenter*, 935 S.W.2d 42, 44 (Mo.App. W.D.1996).

Appellants argue they put forth sufficient evidence of these at trial to give rise to a presumption of undue influence, which the court failed to acknowledge or to require Respondents to rebut. In cases tried by juries, the presumption of undue influence operates to create a submissible question for the jurors, who, after hearing rebuttal evidence from the proponent of the document, would determine from all the evidence whether the settlor was actually unduly influenced when he or she executed the trust. *Watermann*, 369 S.W.3d at 75–76 (citing *Duvall v. Brenizer*, 818 S.W.2d 332, 335 (Mo.App. W.D.1991)).

However, a court-tried case demands less concern for the question of a "prima facie case," and in such cases the trial court, as factfinder, has considerable discretion in the order of taking evidence. *See id.* at 76. Therefore, in court-tried cases, the court need not specifically evaluate whether the contestant met the elements giving rise to a presumption of undue influence, but rather must only determine the ultimate question of fact: whether the trust was the result of undue influence that deprived the settlor of his or her free agency. *Id.; Blando v. Reid*, 886 S.W.2d 60, 66 (Mo.App. W.D.1994)(question of fact).

Thus, the fact that Appellants' evidence here, if believed by the trial court, would have required a presumption of undue influence is not determinative on appeal. *See Watermann*, 369 S.W.3d at 76. Our task is to review the trial court's ultimate conclusion according to our standard of review. The trial court did not misapply the law when it failed to presume Mrs. Rhoades' trust amendment was the result of undue influence.

Even so, Appellants argue that the trial court's conclusion Mrs. Rhoades was not unduly influenced by Rhoades and Herron was against the overwhelming weight of the evidence. We disagree.

"To warrant imposition of a constructive trust on the ground of undue influence, the evidence of fraud must be so clear, cogent, and convincing as to exclude every reasonable doubt in the mind of the trial court." *Id.* Whether the trust was the result of undue influence was a question of fact for the trial court, and we defer to the trial court's factual findings. *See id.* Here, in analyzing the testimony of Dr. Jones and of Mr. Brett on the question of Mrs. Rhoades' mental competency to execute her estate documents, the GAL noted reasons for finding both of them credible,

in contrast to Dr. Horenstein, whose opinion she noted was "questionable for several reasons."

■ Appellants argue that this evidence of mental capacity does not adequately answer the question of whether Mrs. Rhoades was nevertheless unduly influenced. However, "a settlor's mental and physical condition is 'highly material' to the issue of undue influence because it would indicate whether the settlor was susceptible to undue influence." *Watermann*, 369 S.W.3d at 75 (quoting *Ruestman v. Ruestman*, 111 S.W.3d 464, 479 (Mo.App. S.D.2003)). Mrs. Rhoades' doctor and both attorneys provided substantial evidence of Mrs. Rhoades' mental ability to execute the trust amendment on August 20, 2001, which the trial court appropriately took into consideration in determining whether Mrs. Rhoades was unduly influenced.

Additionally, Appellants' primary evidence that Rhoades and Herron unduly influenced Mrs. Rhoades' execution of the 2001 amendment was that Rhoades and Herron isolated their mother from the rest of the family and were always present at her appointments with Dr. Jones and her attorneys. Respondents countered with evidence that Mrs. Rhoades requested that Appellants not receive her contact information, and with evidence from Mr. Brett that Mrs. Rhoades met with him alone when she signed her estate documents. Appellants acknowledged that Mrs. Rhoades had a vindictive attitude toward her children.

Appellants stress that undue influence is rarely proven by direct evidence, and often must be inferred circumstantially. *Estate of Gross v. Gross,* 840 S.W.2d 253, 257 (Mo.App. E.D.1992). They also point out that the fact that Rhoades and Herron were not present at the moment Mrs. Rhoades signed the documents does not

defeat a finding of undue evidence. *Estate of Oden v. Oden,* 905 S.W.2d 914, 919 (Mo.App. E.D.1995). Conversely, even when evidence of influence over the settlor is shown, it does not amount to undue influence unless it removed the settlor's free agency. *Sleepy Hollow Ranch, LLC v. Robinson,* 373 S.W.3d 485, 493 (Mo.App. S.D.2012). Thus, it was the trial court's task to resolve the evidence and determine as a matter of fact whether Mrs. Rhoades' trust and amendment thereto were the result of such influence. *See Watermann,* 369 S.W.3d at 76.

The GAL resolved this in her report by concluding that even considering Mrs. Rhoades' behavior tending to indicate dementia in 2001, in the context of all the evidence, what emerges is "more a picture of a mother who was fully capable of cutting children out of their inheritance merely for spite or vindictiveness ... than one who was incompetent or had her will overborne." The trial court agreed that Mrs. Rhoades' estate documents are consistent with evidence of her vindictiveness and further found Appellants had presented no credible evidence of undue influence. While such an inequitable distribution of assets among Mrs. Rhoades' children illustrates an unfortunate breakdown in the relationships between members of her family, if she had the mental capacity to choose such an inequitable distribution, free from such influence that overcame her own ability to choose, it is not for us to disturb Mrs. Rhoades' final bequest. *See Dorsey,* 156 S.W.3d at 446 (mentally competent testators have right to dispose of property according to their own ways of thinking).

In light of the conflicting evidence and the trial court's factual and credibility findings, we cannot conclude that the overwhelming weight of the evidence shows

clear and convincing proof of undue influence. Point denied.

*Conclusion*

The trial court did not misapply the law in failing to recognize a presumption of undue influence in a court-tried case because it did hear all the evidence and make a finding on the ultimate question of undue influence. The trial court's factual conclusion that Mrs. Rhoades was not unduly influenced was not against the overwhelming weight of the evidence. We affirm.

CLIFFORD H. AHRENS, and ROY L. RICHTER, JJ., concur.