

# In the Missouri Court of Appeals
# Eastern District
### DIVISION TWO

| | | |
|---|---|---|
| ANTHONY HOYT, | ) | No. ED107312 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of Warren County |
| vs. | ) | |
| | ) | Honorable David B. Tobben |
| DAVID ROBERTSON, ET AL., | ) | |
| | ) | |
| Respondents. | ) | FILED: October 29, 2019 |

## Introduction

Anthony Hoyt ("Husband") appeals the trial court's grant of summary judgment in favor of David and Virginia Robertson ("Parents") on two claims in Husband's petition seeking to declare void an amendment to the Debra R. Hoyt Trust (the "Trust"). Before her death, Debra R. Hoyt ("Wife") petitioned to dissolve her marriage to Husband. Wife also amended the Trust by removing Husband as a successor trustee and income beneficiary and appointing Parents as co-trustees (the "Trust Amendment"). Wife's undivided one-half interest in approximately 1000 acres of farmland ("the Farm") that she inherited during the marriage was the sole res of the Trust. Husband appeals the entry of summary judgment, which found the Trust Amendment valid as a matter of law.

Because Husband had no ownership interest in the Farm when it was conveyed to the Trust, was not a co-settlor of the Trust, and was not inequitably deprived of the means to protect his interests when co-granting the Farm to the Trust, we deny Husband's first three points on

appeal. Further, because the summary-judgment record raises no genuine issue of material fact that Wife lacked capacity or was unduly influenced by Parents at the time she executed the Trust Amendment, we deny Husband's final point on appeal. Accordingly, we affirm the trial court's judgment.

Factual and Procedural History

Husband and Wife married in 1983 and had one child ("Son"). Husband and Wife jointly owned several tracts of farmland. On May 4, 2005, Wife inherited an undivided one-half interest as tenant in common in the Farm from Wife's grandparents. Wife's mother is the tenant in common for the remaining one-half interest in the Farm.

On November 23, 2005, Husband and Wife directed an attorney to prepare two deeds and two revocable trusts: the Trust and a joint trust (the "Joint Trust"). Husband and Wife conveyed their jointly owned farmland into the Joint Trust. Wife's inherited one-half interest in the Farm was placed in the Trust. Attached to the Trust under Schedule 1 was a warranty deed (the "Deed") executed by Wife and Husband as co-grantors conveying the Farm to the Trust. The Trust named Wife as sole grantor and sole trustee. The fourteenth provision of the Trust expressly reserved to Wife the exclusive right to amend or revoke the Trust in whole or in part as well as to withdraw property from the Trust (the "Amendment Provision"). The Trust provided that in the event Wife predeceased Husband, "the Trustee shall distribute to Grantor's spouse [Husband] not less often than quarter-annually all of the net income of the Trust." After Husband's death, the income benefits passed to Wife's children (e.g., Son). The Trust provided that, in the event Wife predeceased Husband, Husband would become the successor trustee. In the event Husband also died, Parents would become successor trustees, followed by other members of Wife's family.

2

In his affidavit filed with the summary-judgment record, Husband claimed a property right in the Farm which funded the Trust. Specifically, Husband stated that the property funding the Trust was "the 50% stake we held in the three farms she had inherited from her grandparents into the trust. I was advised that my signature was needed[.]" Husband further stated that he and Wife discussed and orally agreed that he would sign the Deed conveying the Farm to the Trust because, under the Trust, Husband and Wife would be lifetime income beneficiaries until their deaths. Husband stated that he did not read the Trust or know of its provisions, including the Amendment Provision. Husband explained: "I had made a deal, and was assured that in exchange for my signature on the deed conveying the property to [Wife], as trustee, the [T]rust would provide as we had agreed."

Husband and Wife's relationship deteriorated. In 2014, Wife petitioned to dissolve her marriage to Husband on the basis that the marriage was irretrievably broken. In his answer and counter-petition for dissolution, Husband admitted the marriage was irretrievably broken.

Wife suffered from lupus and, later, lymphoma. The summary-judgment record contains no medical records or reports nor affidavits of incapacity. Husband submitted affidavits from himself and Son providing details about Wife's health struggles near the end of her life, including how Son drove Wife when she could not drive and that Wife experienced bouts of delirium.

On June 29, 2016, Wife amended the Trust to revoke the provisions benefiting Husband. Wife's attorney and the notary public who witnessed the execution of the Trust Amendment attested that Wife had testamentary capacity and was not unduly influenced when she executed the Trust Amendment. The Trust Amendment removed Husband as successor trustee and named

3

Parents as successor trustees.  The Trust Amendment also removed Husband as an income beneficiary and substituted Son as the income beneficiary.

Wife died on August 28, 2016, while her petition to divorce Husband remained pending.  In addition to the Trust and Joint Trust, Wife had executed a will (the "Will").  The Will, like the Trust, provided for Husband and Son and gave her remaining estate to the Joint Trust.  Wife did not amend the Will before her death.

On March 3, 2017, Husband filed a petition seeking to invalidate the Trust Amendment removing him as sole trustee and income beneficiary and appointing Parents as co-trustees (the "Petition").  Husband brought five counts: declaratory relief to void the Trust Amendment based on being a co-settlor of the Trust and Wife being unable to amend the Trust without his assent (Count I); breach of trust (or fiduciary duty) by Parents acting as trustees (Count II); an accounting (Count III); alternative relief to set aside the conveyance of the Farm into the Trust for (a) lack of consideration, (b) fraud on marital rights, or (c) improperly delivered deed (Count IV); and lack of capacity and duress (Count V).  Parents counterclaimed for a court-ordered partition and sale of the Trust property and for attorneys' fees incurred in upholding the validity of the Trust Amendment.[1]

Parents moved for partial summary judgment on Counts I, IV (declaratory relief) and V (capacity and duress).  Husband thereafter sought leave to amend his Petition.  The trial court held a hearing on Parents' summary-judgment motion regarding the validity of the Trust Amendment.  After the hearing, Husband cross-moved for partial summary judgment on Counts

---

[1] The trial court granted Husband's motion to appoint a special fiduciary to represent the Trust while Husband and Parents litigated the successor-trustee issue.  In addition to the special fiduciary, who is involved in various motions representing the Trust, other interested parties include Son, who joined in seeking an accounting of the Trust, and Husband's sister's family members, who are also successor trustees and contingent beneficiaries.

4

I (declaratory relief) and II (accounting), raising the theory of equitable estoppel under Count I. In their response, Parents noted that Husband had not pleaded equitable estoppel in his Petition.[2]

After reviewing the parties' cross-motions for summary judgment, the trial court entered judgment in favor of Parents on Counts I, IV, and V on January 11, 2018 (the "2018 Judgment"). The trial court denied Husband leave to amend Counts I, IV, and V, only granting him leave to amend Counts II and III.

Husband moved for the trial court to reconsider and set aside the 2018 Judgment and to certify the interlocutory 2018 Judgment as final under Rule 74.01(b).[3] The trial court denied Husband's motion to reconsider and set aside the 2018 Judgment twice (due to a change of judge), granted Husband's request to certify the 2018 Judgment as final for purposes of appeal, and denied as moot Husband's motion for partial summary judgment on Count I.

Husband then appealed the 2018 Judgment with respect to Count I (declaratory relief) and V (capacity and duress). Husband did not appeal the trial court's grant of summary judgment on Count IV (marital fraud, lack of consideration, or improperly delivered deed). This Court issued an order to show cause why the appeal should not be dismissed for lack of a final judgment. The trial court then entered an order re-certifying the 2018 Judgment for appeal.[4] This Court took the jurisdictional issue with the case.

Points on Appeal

Husband raises four points on appeal. In each point, Husband argues the trial court misapplied the law and therefore erred in granting summary judgment to Parents on Counts I and V of his Petition. In Point One, Husband alleges the trial court erred in determining that

---

[2] Parents also sought leave to add an additional affirmative defense to Count I of Husband's Petition based on the Trust's no-contest clause disinheriting any beneficiary who contests the validity of the Trust.

[3] All Rule references are to Mo. R. Civ. Pro. (2018).

[4] Husband appealed from the 2018 Judgment twice, and this Court granted his motion to consolidate the appeals.

5

Husband had no marital interest in the Farm when it was conveyed to the Trust because he had inheritance rights in the Farm under Chapter 474.[5]  Points Two and Three flow directly from Point One.  In Point Two, Husband asserts that the trial court erred in granting summary judgment to Parents on Count I because he had an interest in the Farm used to fund the Trust.  More specifically, Husband maintains that Wife was equitably estopped from amending the Trust by removing the provisions benefiting Husband in that Husband relied on the oral promise of those benefits as an inducement to sign the Deed conveying the Farm to the Trust.  In Point Three, Husband claims that his interest in the Farm used to fund the Trust made him a co-settlor of the Trust, and therefore, under Section 456.6–602.2, Wife could not amend the Trust without his consent.  Lastly, Husband argues in Point Four that the trial court erred in granting summary judgment to Parents on Count V because the record contained genuine issues of material fact regarding capacity, duress, and undue influence when Wife executed the Trust Amendment.

Jurisdiction

This Court has a duty to inquire sua sponte into the propriety of certifying a judgment as final under Rule 74.01(b).  Gibson v. Brewer, 952 S.W.2d 239, 244 (Mo. banc 1997); ARC Indus., Inc. v. Siegel-Robert, Inc., 157 S.W.3d 344, 346 (Mo. App. E.D. 2005).  On its own motion, this Court requested the parties brief the issue.  Both parties submit that the trial court properly certified the 2018 Judgment granting partial summary judgment to Parents' on Counts I, IV, and V as final.  The trial court found that there was no just reason to delay and that it was necessary to determine the parties' legal interests in the Trust before proceeding with the remaining issues.

---

[5] All Chapter and Section references are to RSMo (2016), unless otherwise indicated.

In assessing whether Rule 74.01(b) certification is proper, we consider the following four factors: (1) whether the action remains pending in the trial court as to all parties; (2) whether similar relief can be awarded in each separate count; (3) whether determination of the claims pending in the trial court would moot the claim being appealed; and (4) whether the factual underpinnings of all the claims are intertwined. ARC Indus., Inc., 157 S.W.3d at 346 (internal citations omitted). If certification under Rule 74.01(b) is improper under these factors, then there is no final judgment and we must dismiss for lack of jurisdiction. Id.

Here, we agree that certification is proper under the first factor because the validity of the Trust Amendment removing Husband as successor trustee and income beneficiary determines Husband's standing for his remaining claims. The 2018 Judgment effectively leaves no claims pending for Husband because, as neither a trustee nor beneficiary, Husband lacks standing to pursue his claims for an accounting (Count II) and breach of trust (Count III). See In re Stephen M. Gunther Revocable Living Tr., 350 S.W.3d 44, 45 (Mo. App. E.D. 2011) (internal citation omitted) (denying a motion to dismiss an appeal for lack of a final judgment where "[b]y concluding that the trustee had no fiduciary relationship with the beneficiaries before the settlor's death, the judgment thus effectively disposed of all issues and all parties in the case, leaving nothing for future determination"); John R. Boyce Family Tr. v. Snyder, 128 S.W.3d 630, 639–40 (Mo. App. E.D. 2004) (internal citations omitted) (discussing standing for successor trustees and beneficiaries to bring equitable and money-damages claims for an accounting and breach of trust). The trial court further found Husband's motion for partial summary judgment on Counts I and II mooted by the 2018 Judgment, and Husband's Count III for breach of trust may likewise be considered mooted under the doctrine of implicit finality. See First Cmty. Credit Union, 395 S.W.3d 571, 577 (Mo. App. E.D. 2013) (internal quotation omitted) ("If a judgment, by

7

implication, necessarily carries with it a finding upon other counts, the judgment will be sustained as final even though the count is not specifically mentioned."). The 2018 Judgment also leaves Husband with no legal interest in the Farm with respect to Parents' counterclaim for partition. See In re Stephen, 350 S.W.3d at 45; Podlesak v. Wesley, 849 S.W.2d 728, 730 (Mo. App. S.D. 1993) (allowing appeal from summary judgment despite a pending counterclaim where determining the defendant's interest in the disputed property would resolve the counterclaim, and the trial court observed in a docket entry that the counterclaim was rendered moot by the summary judgment).

The second factor also favors finality, as similar relief cannot otherwise be granted. See ARC Indus., Inc., 157 S.W.3d at 346. The 2018 Judgment adjudicated all of Husband's legal theories on his relationship to the Trust and the Farm in a single "judicial unit" distinct from the other claims which are "not [merely] differing legal theories or issues presented for recovery on the same claim." First Cmty. Credit Union, 395 S.W.3d at 576–77 (citing Gibson, 952 S.W.2d at 244). The third factor also supports finality because the remaining claims would not moot the claim being appealed, in that the claims for breach of trust, an accounting, and partition would not resolve Husband's legal interests in the Trust. See ARC Indus., Inc., 157 S.W.3d at 346. Fourth and finally, the factual underpinnings of the claims on appeal are sufficiently distinct from the remaining claims. See id. The facts relevant to the 2018 Judgment concern the funding of the Trust and the Trust Amendment. Facts regarding Parents' conduct serving as trustees for breach of trust are distinct from whether Husband is the rightful successor trustee. Likewise, facts concerning the division of land owned by the Trust as a tenant in common for the partition claim are separate from facts about the underlying validity of the Trust Amendment.

Accordingly, the four-factored test favors certification under 74.01(b). See id. Because we find the trial court properly certified the finality of the 2018 Judgment, we have jurisdiction to hear the appeal. See id.

## Standard of Review

We review a trial court's grant of summary judgment de novo. In re Stephen, 350 S.W.3d at 45 (citing ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993)). To be entitled to summary judgment, the moving party must demonstrate a right to judgment as a matter of law based on facts about which there is no genuine dispute. Id. at 377; Channawood Holdings, LLC v. 1209 Washington, LLC, 333 S.W.3d 480, 485 (Mo. App. E.D. 2010). "When considering an appeal from summary judgment, we review the record in the light most favorable to the party against whom judgment was entered." ITT Commercial Fin. Corp., 854 S.W.2d at 376. We review the uncontroverted facts without weighing credibility, and "[f]acts set forth by affidavit or otherwise in support are taken as true unless contradicted by the non-moving party's response." Peters v. Peters, 323 S.W.3d 49, 51 (Mo. App. E.D. 2010).

## Discussion

**I.      Points One, Two, and Three—Summary Judgment was Properly Granted to Parents on Husband's Claim for Declaratory Relief in Count I of his Petition.**

Each of Husband's first three points on appeal challenge the trial court's grant of summary judgment to Parents on Count I of Husband's Petition seeking declaratory relief from the Trust Amendment removing him as successor trustee and income beneficiary. Husband advances two main grounds for reversal based on the premise that the trial court erred in finding he had no ascertainable interest in the Farm at the time it was conveyed to the Trust; Husband maintains that by signing the Deed conveying the Farm to the Trust as a co-grantor, he was a co-

9

settlor of the Trust such that Wife could not amend the Trust without his consent under Section 456.6–602.2 of the Missouri Uniform Trust Code (the "MUTC"). Alternatively, Husband posits that his assent to conveying the Farm to the Trust was induced by an oral agreement with Wife that he would be an income beneficiary and successor trustee of the Trust such that Wife was equitably estopped from later removing him as an income beneficiary and successor trustee.

A.    Point One—Husband's Interest in the Farm

Husband claims that because he was married to Wife at her death, the trial court erred in applying statutes from Chapter 452 (Dissolution)—particularly the disposition of marital versus separate property under Section 452.330—to determine that Husband established no marital interest in the Farm at the time it was conveyed to the Trust.

Initially, we observe that substantial confusion existed at the trial court regarding the characterization of Husband's interest in the Farm at the time it was conveyed to the Trust. Much of that confusion is attributable to Husband. In his Petition, Husband alleged that he contributed property to the Trust. Specifically, Husband alleged that he and Wife granted their interest in the Farm to the Trust. Husband claimed that the Farm was "community property." Husband further alleged that he had marital rights in the Farm pursuant to Chapter 474 (Probate). In his response to Parents' motion for summary judgment, in which Parents noted that Missouri is not a community property state, Husband clarified that the nature of his interest in the Farm at the time of conveyance was based on Sections 474.150[6] (gifts in fraud of marital rights—presumptions on conveyances) and 474.160 (election by surviving spouse to take against will).[7]

---

[6] Section 474.150 has since been amended with minor changes, primarily removing gendered language.
[7] At other times in the pleadings, Husband cites Sections 473.150 (remaining executor or administrator to continue) and 473.160 (bond not required, when) but does not explain their connection (if any) to his interest in the Farm.

Because Husband raised the issue of whether the Farm was separate, inherited property owned by Wife or marital property owned jointly by Husband and Wife, the issue was properly before the trial court. Moreover, the trial court did not necessarily err in its reference to the dissolution statutes, because while Section 452.330 did not govern the case, as the parties were married at Wife's death, the trial court appropriately supported its finding that the Farm was separate property owned by wife with a relevant, analogous statute. See, e.g., Kennedy v. Milligan, 915 S.W.2d 784, 790 (Mo. App. W.D. 1996) (analogizing to the characterization of separate versus marital property in Section 452.330 in a case in which the parties remained married); see also In re Marriage of McIntosh, 126 S.W.3d 407, 411 (Mo. App. S.D. 2004) (internal citation omitted) ("[U]pon the death of a spouse before judgment . . . the issue of marital status becomes moot.").

Even if the dissolution statute was not dispositive of Husband's claim, the corresponding marriage statute produces the same result. See Section 451.250.1 (providing that real estate that comes to a spouse by inheritance shall be and remain that spouse's separate property and under that spouse's sole control); State v. Cox, 784 S.W.2d 244, 245 (Mo. App. E.D. 1989) (noting a husband "has no ownership interest since [the wife's] interest is her separate property, [Section] 451.250, RSMo 1986 (property devised to spouse is separate property), and the common-law interests of a husband in his wife's property have been abolished by statute."). Indeed, the summary-judgment record plainly shows that during the marriage, Wife inherited the Farm when Wife's grandmother conveyed the Farm to Wife and Wife's mother as tenants in common. The Farm was never conveyed to Husband and Wife as co-grantees. Further, Husband did not otherwise allege any facts to support finding the Farm had become joint property, such as through commingling of marital assets or financial improvements. See, e.g., McAllister v.

11

McAllister, 101 S.W.3d 287, 293 (Mo. App. E.D. 2003); Klaus v. Klaus, 918 S.W.2d 407, 409 (Mo. App. E.D. 1996). While a presumption arises in Missouri that conveying property to a husband and wife as *co-grantees* makes them joint tenants by the entirety, there is no inverse presumption that being *co-grantors* of one spouse's separately-inherited property creates in the other spouse any new property interest. See Ronollo v. Jacobs, 775 S.W.2d 121, 123 (Mo. banc 1989) (internal citation omitted); Spicer v. Spicer, 568 S.W.3d 480, 487 (Mo. App. E.D. 2019) (internal citation omitted). In this case, Husband's signature on the Deed simply rebutted the presumption that any conveyance of property by Wife—even Wife's separate property—could be in fraud of Husband's marital rights. See Section 474.150 (codifying that the only restriction on a spouse's ability to convey separate property is that the conveyance cannot be made with the intent to defraud the other spouse). By contrast, Husband's signature on the Deed was *not* needed to convey the Farm into the Trust. Husband had no ownership interest in the Farm to convey. Husband's signature on the Deed as a co-grantor did not grant him any ownership interest in the Farm. See Mitchell v. Residential Funding Corp., 334 S.W.3d 477, 505 (Mo. App. W.D. 2010) ("*nemo dat quod non habet*—one cannot transfer what one does not have"). The trial court correctly determined that Husband had no marital ownership interest in the Farm at the time the Farm was conveyed to the Trust.

In seeking to set aside the Trust Amendment in Count I, we are cognizant that Husband alleges more than an ownership interest in the Farm at the time the Farm was conveyed to the Trust. Rather Husband further asserts that he possessed an *expected inheritance* interest in terms of an election against a will or fraud on marital rights. While Husband assigns error to the trial court's reliance on Chapter 452 (Dissolution) because Husband and Wife's divorce was never finalized, Husband relies on Chapter 474 (Probate) to address his interests in the Farm

12

*after Wife's death* in order to claim a property right in the Farm while Wife was alive. Although Husband does not offer any case law on the issue, we view the nature of this asserted interest as distinct from an ownership interest, given that an expected inheritance interest does not vest an ownership interest until death. See, e.g., In re Brockmire, 424 S.W.3d 445, 449 (Mo. banc 2014) (internal quotations and emphases omitted) ("[N]o one is an heir to the living and . . . the living have no heirs in a legal sense. As a result, heirs apparent or expectant heirs of a living person have no fixed or vested interest in the property of such person, and it is not until the death of the owner that his property becomes subject to the laws of descent and distribution or that the persons designated as heirs have any interest therein."). Husband makes the counterfactual argument that *if* Wife had died with just her Will and no Trust, he would have inherited her rights in the Trust assets under the Will (including the Farm and its derivative income), or could have elected to take against the Will. Husband thereby concludes that he possessed an ownership interest in Wife's separately inherited property before said property was put into the Trust. With this argument, Husband is not alleging a present ownership interest in the Farm at the time of the conveyance or the Trust Amendment, but a future inheritance interest in Wife's separate property if Wife predeceased him.

The single limitation on a spouse's ability to convey separately-inherited property is that the conveyance cannot be in fraud on the other spouse's marital rights. See Section 474.150; In Estate of McKenna, 500 S.W.3d 850, 855–56 (Mo. App. E.D. 2016) (internal citation omitted) ("The common law of Missouri has long been that a spouse may not give away his [or her] property without consideration and with the intent and purpose of defeating the marital rights of the other spouse."). Notably, Husband does not advance an argument that Wife acted to defraud him of his marital rights. Although Husband initially alleged marital fraud in Count IV of his

13

Petition, he abandoned that claim on appeal. The record plainly shows that Husband agreed to convey the Farm to the Trust by signing the Deed, that Husband and Wife were not contemplating divorce at the time of the conveyance, and that Wife had no intent to deceive Husband when creating the Trust. See id. Because marital fraud is the only restriction on a spouse's ability to alienate separate property, and Husband concedes marital fraud is inapplicable to the facts of this case, Wife was not otherwise legally restricted from conveying her separate ownership interest in the Farm. See id. Thus, in order to invalidate the Trust Amendment, Husband requires some other legal mechanism. See id. Because no such mechanism is argued in Point One, and because the trial court did not err in analogizing its finding that Husband alleged no marital ownership interest in the Farm to the dissolution statute, Husband's Point One provides no grounds for reversing summary judgment. See Rule 84.04(d)(1)(C) (requiring an appellant to "[e]xplain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error"); Herd v. Herd, 537 S.W.3d 414, 417 (Mo. App. S.D. 2018).

Even if we were to accept the premise that Husband had an inheritance interest in the Farm at the time it was conveyed to fund the Trust, summary judgment was still properly granted to Parents because, as discussed below, the record on appeal demonstrates Husband cannot as a matter of law invalidate the Trust Amendment under either the MUTC or the principles of equitable estoppel. See In re Stephen, 350 S.W.3d at 45 (citing ITT Commercial Fin. Corp., 854 S.W.2d at 376).

B.     Point Three—Summary Judgment was Properly Granted under the MUTC

We address the statutory remedy first. In Point Three, Husband proposes that because he had an interest in the Farm used to fund the Trust, the trial court erred in granting summary judgment to Parents on Count I. In particular, Husband maintains that signing the Deed

14

conveying the Farm to the Trust as a co-grantor made him a co-settlor of the Trust, and therefore

Section 456.6–602 prohibited Wife from subsequently amending the Trust without his consent.

> The relevant part of Section 456.6–602 states:

> If a revocable trust is created or funded by more than one settlor:
> (1) to the extent the trust consists of community property, the trust may be revoked by either spouse acting alone but may be amended only by joint action of both spouses; and
> (2) to the extent the trust consists of property other than community property, each settlor may revoke or amend the trust with regard to the portion of the trust property attributable to that settlor's contribution.

Section 456.6-602.2.  In assessing Husband's claim for declaratory relief under this MUTC

statute, we must interpret terms such as "settlor" and "community property" under the express

language of the MUTC.  See Hardt v. Vitae Found., Inc., 302 S.W.3d 133, 138 (Mo. App. W.D.

2009) ("[T]his court lacks the authority to apply common law precedent to construe the

legislation in a manner that is inconsistent with the express language of the MUTC.").  The

MUTC became effective January 1, 2005, and applies to the Trust in this case.  See Section

456.6–602.1; In re Stephen, 350 S.W.3d at 45 (internal citation omitted).  In the absence of

recent Missouri cases applying the MUTC's definition of settlor—in fact, Husband cites no cases

applying the MUTC—we find persuasive a federal bankruptcy opinion applying Missouri law,

which explained the history and purpose of Section 456.6–602 and why contributing property to

fund a trust does not necessarily make the grantor a co-settlor of that trust.  In Re Reuter, 499

B.R. 655, 672 (Bankr. W.D. Mo. 2013); see also Cutcliff v. Reuter, 889 F.3d 491, 496–97 (8th

Cir. 2018) (citing In Re Reuter, 499 B.R. at 675) (agreeing with In Re Reuter's analysis of settlor

status under the MUTC).  The MUTC defines "settlor" as:

> a person, including a testator, who creates, or contributes property to, a trust.  If more than one person creates or contributes property to a trust, each person is a settlor of the portion of the trust property attributable to that person's contribution

except to the extent another person has the power to revoke or withdraw that portion pursuant to the terms of the trust[.]

Section 456.1–103(23).[8]

Here, Husband misstates the law in claiming that he is a co-settlor of the Trust merely because he signed the Deed conveying the Farm to the Trust. First, as we held in the previous section, Husband had no ownership interest in the Farm at the time it was conveyed to the Trust; therefore Husband did not contribute property to the Trust as required to satisfy the first sentence in the definition of settlor or the corresponding provisions in Section 456.6–602. See Sections 456.1–103(23); 456.6–602. Second, even assuming Husband's expected inheritance interest constituted a valid contribution to the Trust, the MUTC does not support the "simplistic argument" that spouses who jointly contribute assets to a trust necessarily both become settlors of the trust. See In re Reuter, 499 B.R. at 673 (internal citation omitted) ("As this Court noted previously [even before Missouri adopted the MUTC], a contribution to a trust does not a settlor make."). Critically, the second sentence of the MUTC's definition of settlor cannot be ignored. Deriving settlor status solely from a person's contribution to a trust "disregards the second sentence of the definition which unequivocally modifies the first and as a result, narrows the definition [of a settlor]." In re Reuter, 499 B.R. at 672. In In re Reuter, although the husband contributed property (in which he had an *ownership* interest) to the trust, the trust contained a provision expressly reserving to the wife the sole power to amend or revoke the trust. Id. Because only the wife had the power to revoke the portion of the trust property contributed by husband, the husband was not deemed a settlor under the MUTC and his consent to revoke or amend the trust was not required. Id. at 672–73 (citing Sections 456.1–103(23); 456.6–602). Similarly, here, the Trust contained an amendment provision expressly and exclusively reserving

_____

[8] Section 456.1–103(23) has since been renumbered to (24).

16

to Wife the right to amend or revoke the Trust in whole or in part as well as to withdraw property from the Trust. Husband's assertion of co-settlor status is an erroneous conclusion of law even if, ***assuming arguendo***, the summary-judgment record established that Husband had contributed property in which he had an ownership interest to fund the Trust. See id.

Furthermore, in arguing that the Trust was funded with community property and thus any revocation required joint spousal action, Husband advances a false equivalency between "marital property" and "community property." Importantly, in Section 456.6–602.2, "the use of the phrase 'community property' is not a drafting error based on a failure to delete an inapplicable provision of a uniform statute or meant to be equivalent to 'marital property.'" Id. at 674. Rather, "[t]he language of the statute is unambiguous and the legislative history is clear—the purpose of [Section] 456.6–602 is to address the characterization of community property transferred to a trust, not to confer the power to revoke on a person contributing marital property to a trust." Id. Missouri is not a community property state, and Husband and Wife had no community property, hence it is unavailing for Husband to rely on Section 456.6–602.2(1), which expressly applies only to the extent that the trust consists of community property. Id.

Consequently, even granting Husband all reasonable inferences, Husband cannot invalidate the Trust Amendment based on Section 456.6-602.2. See id. Accordingly, Husband cannot avoid summary judgment on Count I under the MUTC. See In re Stephen, 350 S.W.3d at 45 (citing ITT Commercial Fin. Corp., 854 S.W.2d at 376).

C.      Point Two—Summary Judgment was Properly Granted on Equitable Estoppel

We next address the remedy of equitable estoppel. Husband contends that because he and Wife orally agreed that he would sign the Deed conveying the Farm to the Trust in exchange for benefits under the Trust, Wife was equitably estopped from later removing him as a Trust income beneficiary and successor trustee.

17

### 1. Preservation

First, because equitable estoppel is neither specifically mentioned in the trial court's judgment nor in Husband's Petition, we consider whether this point is preserved for appeal. See Pope v. Pope, 179 S.W.3d 442, 450–51 (Mo. App. W.D. 2005) (en banc) (internal citation omitted) (noting that Rule 84.13 limits appellate review of issues not briefed or not properly briefed and not reviewed by the trial court). Husband does not aid our analysis by failing to provide any statements of error preservation as required by Rule 84.04. Rule 84.04(e) ("For each claim of error, the argument shall also include a concise statement describing whether the error was preserved for appellate review; if so, how it was preserved[.]").

In order to assert his right to equitable estoppel, Husband must have either specifically pleaded the remedy or alleged facts that would support it. Weil v. Rigali, 980 S.W.2d 89, 92 (Mo. App. E.D. 1998) (internal citation omitted). The record is clear that Husband did not specifically plead equitable estoppel either in his Petition or in his response to Parents' motion for summary judgment. See Ellsworth v. Worthey, 612 S.W.2d 396, 401 (Mo. App. S.D. 1981) (internal citation omitted) (noting the non-moving party must present all material evidence and legal theories in his response to a summary-judgment motion and may not seek to set aside summary judgment due to a matter not earlier presented). However, Husband did plead facts in his Petition that would support equitable estoppel and also raised the theory of equitable estoppel in his cross-motion for partial summary judgment on Count I for declaratory relief. See Weil, 980 S.W.2d at 92 (allowing fact-pleading for equitable estoppel); see also Arbors at Sugar Creek Homeowners Ass'n v. Jefferson Bank & Trust Co., Inc., 464 S.W.3d 177, 189 (Mo. banc 2015) (internal citation omitted) (noting Missouri recognizes declaratory relief as an equitable remedy). Because we can glean from the record that the trial court had before it all of the arguments from the cross-motions for summary judgment, and because the trial court ruled on Husband's cross-

18

motion for summary judgment on the same day it issued the 2018 Judgment, we are satisfied that the trial court reviewed Husband's equitable-estoppel claim prior to Husband's motion to set aside the 2018 Judgment. See Ellsworth, 612 S.W.2d at 401. Therefore, we find the point sufficiently preserved for review. See Pope, 179 S.W.3d at 450–51.

## 2.    Equitable Estoppel

The principle of equitable estoppel is well understood to mean that "no person shall take advantage of or benefit from his or her wrong." Boland v. Saint Luke's Health Sys., Inc., 471 S.W.3d 703, 717 (Mo. banc 2015) (internal citation omitted). "Equitable estoppel should be applied with great care and caution" as "[e]stoppel is not a favorite of the law and will not arise unless justice to the rights of others demands it." Bolz v. Hatfield, 41 S.W.3d 566, 572 (Mo. App. S.D. 2001) (internal quotations omitted); see also Channawood, 333 S.W.3d at 488 (internal citation omitted). The elements of equitable estoppel include: (1) a statement (or act) by the person to be estopped that is inconsistent with the claim later asserted; (2) action taken by a second party in reliance on that statement; and (3) injury results to the second party if the first party is permitted to contradict or repudiate his statement. Channawood, 333 S.W.3d at 487–88 (internal citation omitted).

Equally vital to our analysis of Husband's claim, "[i]f both parties know the facts or have equal means of ascertaining them there can be no estoppel" because "[o]ne cannot set up another's act or conduct as the ground of an estoppel when he [or she] knew or had the same means of knowledge as the other to the truth." Id. at 488 (citing Farmland Indus., Inc. v. Bittner, 920 S.W.2d 581, 583 (Mo. App. W.D. 1996)) (affirming summary judgment where equitable estoppel failed as a matter of law because the party claiming the benefit of the estoppel could not show he was misled where both parties had equal means to ascertaining the facts); Bolz, 41 S.W.3d at 572 (internal citation omitted) ("In order to rely on estoppel, a party must have

19

exercised reasonable diligence to acquire knowledge of the real facts."). A court will not grant a remedy in equity to a party who neglects to protect his own interests. See Channawood, 333 S.W.3d at 488; Bolz, 41 S.W.3d at 572.

Here, even if Husband anticipated a future interest in Wife's separately inherited property should she predecease him, Husband signed the Deed conveying any such interest to the Trust. Husband claims not to have read the Trust, which sets forth the benefits upon which he now claims he relied when signing the Deed. Husband and Wife went to the attorney's office together, where they had prepared two separate trusts—both the Joint Trust and the Trust. Husband does not allege in his affidavit that he sought to read the Trust documents and was denied the ability to do so. Husband also never alleges that Wife purposefully intended to defraud him when creating the Trust, as required to prove marital fraud under Section 474.150, which Husband abandoned on appeal. See In Estate of McKenna, 500 S.W.3d at 856, 858–59. The summary-judgment evidence makes clear that Husband made no attempt to learn about the Trust's provisions. Husband had the same opportunity as Wife to inquire about the Trust provisions benefiting him as well as the Amendment Provision reserving to Wife the exclusive authority to amend the Trust. Husband's lack of inquiry is fatal to his equitable-estoppel claim because the undisputed facts in the summary-judgment record show Husband had equal means as Wife to ascertain the facts and was not inequitably misled into signing the Deed conveying the Farm to the Trust. See Channawood, 33 S.W.3d at 488; Bolz, 41 S.W.3d at 572; Farmland Indus., Inc., 920 S.W.2d at 583–84 (noting a party "cannot claim equitable estoppel when his lack of knowledge was due to his own failure to read the agreement before signing it") (reversing equitable estoppel where the party's failure to read the agreement's revocation provisions made his reliance on an oral release from the agreement unreasonable).

20

Because there exists no genuine dispute of fact as to Husband's voluntary decision not to seek review of the Trust and its provisions, and because the Trust plainly permits Wife as sole trustee and grantor to amend any of its provisions, Husband cannot as a matter of law set aside the Trust Amendment through equitable estoppel. See Channawood, 33 S.W.3d at 488 (citing Farmland Indus., Inc., 920 S.W.2d at 583–84); Bolz, 41 S.W.3d at 572.

Furthermore, the absence of inequity distinguishes this case from the only judicial authority upon which Husband relies to advance his equitable-estoppel argument: McDonald v. McDonald, 814 S.W.2d 939 (Mo. App. S.D. 1991). In McDonald, the husband, a real estate developer, presented the wife with a revocable trust instrument and warranty deeds conveying some of his separate property to fund a trust. Id. at 942–43. Although the spouses had a prenuptial agreement requiring joint execution of any instrument transferring property, the wife initially refused to sign the deeds upon reading the trust instrument because she felt that the provisions of the trust benefitting her were insufficient. Id. Only after the husband threatened her with divorce did the wife sign the deeds. Id. Before the husband died, he amended the trust several times, first adding more provisions benefiting the wife, but later revoking all of the provisions benefiting her. Id. Among other trust-related holdings, the trial court declared the final amendment revoking all wife's benefits invalid, and the Southern District affirmed on appeal. Id. at 950.

Husband reasons that McDonald governs our analysis because, like here, the disputed trust was funded with one spouse's separately owned property through a deed co-signed by both spouses. Id. at 946. McDonald held that the husband was equitably estopped from amending the trust to remove the provisions benefiting his wife. Id. at 950. Husband's argument that McDonald is instructive fails because the funding of the trust with a spouse's separate property is

21

where the similarity of facts ends. <u>McDonald</u> presented "unique circumstances" and is distinguishable in numerous respects. <u>Id.</u> First, <u>McDonald</u> was decided under a different standard of review, in which the Southern District was free to affirm the trial court's judgment on any basis. <u>Id.</u> Indeed, the Southern District acknowledged that the trust amendment could not be invalidated through the common law of trusts or marital fraud,[9] and instead fashioned an equitable remedy even though the trial court's judgment made no mention of equitable relief. <u>Id.</u> Moreover, <u>McDonald</u> is factually dissimilar because the wife in <u>McDonald</u> read the trust instrument, expressed reservations about its terms, and was coerced upon threat of divorce into signing the deeds conveying the husband's property to fund the trust. <u>Id.</u> at 943, 950. Contrastingly, as explained above, the summary-judgment record here contains no similar allegations by Husband that would justify imposing an equitable remedy to afford him relief, because where a party "was derelict in not protecting [his or] her property rights[,] [j]ustice does not demand the courts to act with more zeal on behalf of defendant than [he or] she chose to do for [himself or] herself." <u>Bolz</u>, 41 S.W.3d at 572; <u>see also</u> <u>Channawood</u>, 333 S.W.3d at 488.[10] We further note that <u>McDonald</u> was decided before Missouri adopted the MUTC and thus lacked its statutory guidance. We must adhere to our mandate to construe the law surrounding trusts in a manner consistent with the MUTC. <u>See</u> <u>In re Stephen</u>, 350 S.W.3d at 45; <u>Hardt</u>, 302 S.W.3d at 138; <u>In re Reuter</u>, 499 B.R. at 673.

Because Husband cannot prevail on either his co-settlor or equitable-estoppel theories given the uncontroverted facts in the summary-judgment record, Parents are entitled to judgment

---

[9] When considering why <u>McDonald</u> devised an estoppel remedy benefiting the wife, we note that the wife actually lost all seven of her points on appeal. For instance, although the record supported finding the wife had been coerced into signing the documents to fund the trust, she could not be afforded relief because she had not properly pleaded her claim.

[10] Additionally, because estoppel is a remedy in equity, the trial court on remand would also consider allegations by Parents that Husband, rather than Wife, was the wrongdoer in the case. For instance, Parents claim Husband purposefully delayed the dissolution trial to ensure he would inherit from Wife against her wishes.

22

on Count I.  See In re Stephen, 350 S.W.3d at 45 (citing ITT Commercial Fin. Corp., 854 S.W.2d at 376); Channawood, 333 S.W.3d at 485.  Points One, Two, and Three are denied.

## II.      Lack of capacity and duress

In Point Four, Husband challenges the trial court's grant of summary judgment to Parents on Count V because the record contained genuine issues of material fact regarding capacity, duress, and undue influence when Wife amended the Trust.[11]

### A.      Capacity

"If the testator lacked testamentary capacity at the time of execution, the will or trust (or any amendments thereto) is deemed void."  Finkle-Rowlett Revocable Tr. Dated August 28, 2009 v. Stiens, 558 S.W.3d 95, 100 (Mo. App. W.D. 2018) (citing Ivie v. Smith, 439 S.W.3d 189, 200 (Mo. banc 2014)); see In re Gene Wild Revocable Tr., 299 S.W.3d 767, 778 (Mo. App. S.D. 2009).  "The capacity required to create, amend, revoke, or add property to a revocable trust . . . is the same as that required to make a will."  Section 456.6–601.  Capacity is a low bar and only requires the testator be able to:

> (1) understand the ordinary affairs of her life; (2) understand the nature and extent of her property; (3) know the persons who were the natural objects of the bounty; and (4) intelligently weigh and appreciate her natural obligations to those persons and know that she is giving her property to the persons mentioned in the document.

In re Gene Wild Revocable Tr., 299 S.W.3d at 777–78 (internal citations omitted).  The MUTC establishes a presumption that the settlor of a revocable trust has capacity to revoke or amend it:

> 1. While a trust is revocable and the settlor has capacity to revoke the trust, rights of the beneficiaries are subject to the control of, and the duties of the trustee are owed exclusively to, the settlor.

---

[11] We note that Husband fails to cite any statute or case in support of his argument in Point Four other than for the standard of review.  "An appellant has an obligation to cite appropriate and available precedent if he expects to prevail, and, if no authority is available to cite, he should explain the reason for the absence of citations."  Brown v. Ameristar Casino Kansas City, Inc., 211 S.W.3d 145, 148 (Mo. App. W.D. 2007) (citing Thummel v. King, 570 S.W.2d 679, 687 (Mo. banc 1978)).  Although a point on appeal may be deemed abandoned for failure to cite relevant authority, we may exercise our discretion to review the point on its merits.  See id.

23

2. A settlor is presumed to have capacity for the purposes of subsection 1 of this section until either the settlor is adjudicated totally incapacitated or disabled or the trustee has received an affidavit of incapacity.

. . .

5. In this section, an "affidavit of incapacity" means a written certificate furnished by at least one licensed medical doctor that states that the settlor lacks capacity to revoke the trust.

Section 456.6–603. By codifying the presumption that a settlor has capacity to revoke trust provisions and requiring an affidavit of incapacity to rebut it, the MUTC heightened the common-law requirements for challenging a settlor's capacity. As noted in the Comment to the Uniform Trust Code Section 603, "[e]nacting jurisdictions are free . . . to provide a more precise definition of when a settlor is incapacitated, as has been done in the Missouri enactment [of Section 456.6–603]." Indeed, Missouri cases since the MUTC's enactment reflect the application of its statutory requirements. See Ivie, 439 S.W.3d at 197, 207 (where the record contained affidavits of incapacity from five physicians); Peters, 323 S.W.3d at 52 (where the settlor was adjudicated totally incapacitated and disabled); In re Gene Wild Revocable Tr., 299 S.W.3d at 778–79 (where the record contained medical records and medical expert testimony).

Here, in response to Parents' motion for summary judgment, Husband did not submit an affidavit of incapacity nor any medical reports or records concerning Wife's capacity. See Ellsworth, 612 S.W.2d at 401 (noting that all material evidence must be presented in response to a summary-judgment motion). The MUTC states that submitting either an adjudication of total incapacitation or an affidavit of incapacity from a medical doctor is the ***only*** means by which the presumption of settlor's capacity to revoke or amend the trust can be overcome. Section 456.6–603.2, .5. In the absence of any evidence from a medical doctor indicating Wife's incapacity, Parents are entitled to summary judgment as a matter of law on the issue of capacity. See Section 456.6–603.2; Peters, 323 S.W.3d at 51.

24

B.      Undue influence

Undue influence "is usually defined as such overpersuasion, coercion, force, or deception as breaks the will power of the testator or grantor and puts in its stead the will of another." Estate of Meyer v. Presley, 469 S.W.3d 857, 864 (Mo. App. W.D. 2015) (internal quotation omitted).  Under the MUTC, "[a] trust is void to the extent its creation was induced by fraud, duress, or undue influence."  Section 456.4–406.  A party establishes a presumption of undue influence by adducing substantial evidence showing: (1) a confidential and fiduciary relationship, (2) that the fiduciary obtained a benefit, and (3) some additional evidence inferring undue influence.  Estate of Meyer, 469 S.W.3d at 864 (internal citation omitted).  Under the summary-judgment standard, this presumption "places a prima facie case requirement upon the party alleging undue influence[.]"  Id. (internal citation omitted).  Thus, Husband, as the party challenging the Trust Amendment's validity, bears the burden of adducing sufficient evidence that, if proved, would support finding undue influence.  Id. (internal citation omitted).

Husband alleges that Parents rushed the Trust Amendment in order to deprive Husband of his inheritance rights before Wife died.  Reviewing the summary-judgment record in the light most favorable to Husband, Husband has not made a submissible case that Wife was unduly influenced by Parents when she executed the Trust Amendment.  See id.  Husband presented evidence that Son drove Wife to the bank in June 2016 to meet with Parents and Parents' attorney and that Husband and Wife had attempted reconciliation.  Wife undoubtedly had a close relationship with her Parents, who may even have influenced her as she pursued divorce from Husband and battled long-standing illnesses.  But there is nothing in the summary-judgment record to suggest Wife's will was overborn.[12]  See id. (internal quotation omitted) ("[E]ven when

---

[12] To the contrary, Wife's acts in amending the Trust can be viewed as consistent with her efforts to obtain a dissolution of her marriage to Husband.

25

evidence of influence over the settlor is shown, it does not amount to undue influence unless it removed the settlor's free agency."). Husband has not demonstrated how the evidence in the summary-judgment record raises a genuine issue of material fact as to the required elements of a claim of undue influence or duress for the case to proceed beyond summary judgment. Therefore, summary judgment was properly granted to Parents on the claim for undue influence. See In re Stephen, 350 S.W.3d at 45 (citing ITT Commercial Fin. Corp., 854 S.W.2d at 376). Point Four is denied.

Conclusion

The judgment of the trial court is affirmed.

_____
KURT S. ODENWALD, Judge

Philip M. Hess, P.J., concurs.
Lisa P. Page, J., concurs.